PINKOWSKI, Appellant, v. PINKOWSKI, Respondent.

*No. 276. Submitted under sec. (Rule) 251.54 December 2, 1974.— Decided March 6, 1975.*
(Also reported in 226 N. W. 2d 518.)

The cause was submitted for the appellant on the brief of *Georgia A. Felger,* attorney, and *Ronald J. Jaskolski* and *Walther & Halling,* of counsel, all of Milwaukee; and for the respondent there was a brief by *Michael Klein,* attorney, and *Finnegan & Finnegan,* of counsel, all of Milwaukee.

DAY, J. This is an appeal from a portion of a judgment of divorce granted to the plaintiff Anna C. Pinkowski from Leonard A. Pinkowski, defendant, on the ground of voluntary separation.

Two questions are raised on the appeal by the appellant Anna C. Pinkowski: (1) Did the trial court err in not including among the assets for division between the

parties a pension fund belonging to the husband valued at $23,551? We conclude it was error not to include the value of the pension fund in the assets for distribution. (2) Did the trial court abuse its discretion in awarding only $70 per month alimony to the wife? We conclude the trial court did not abuse its discretion, but we return to the trial court the issue for reconsideration in view of our answer to the first question and the changed circumstances of the parties since the divorce was granted.

Mr. and Mrs. Pinkowski had been married for thirty years at the time the divorce was heard on December 19, 1972. Five children had been born to them, four of whom were of age. Custody of a minor daughter Audrey, born January 11, 1957, was awarded to Mrs. Pinkowski and the court ordered the defendant to pay $80 per month support for Audrey's care and maintenance. That portion of the judgment is not at issue in this appeal.

The plaintiff wife was fifty-three years of age, worked as a school-crossing guard for $8.91 per day and had a net monthly income after taxes of approximately $123 per month. In addition she received $15 per week from each of two adult employed sons for room, board and laundry. The court in its directions for findings of fact and conclusions of law found that the plaintiff had worked full time when the parties were first married and part time ever since and that their property had been accumulated from their joint efforts. The court found the plaintiff lacked substantial skills which limited her employment opportunities.

Mr. Pinkowski, aged fifty-three years at the time of the divorce, had been employed throughout their married life and was employed by the Falk Corporation. With some help from her relatives and his, he had built the home they occupied. After taxes and social security deductions he had a weekly pay of $139.65.

The court found that the parties were possessed of a home worth $25,000, a checking account of $80, a savings account in the credit union of $858.97 (which had been saved for taxes), a coin collection worth $350 and other personal property on which no valuation was placed.

In dividing the property the court ordered that the homestead should be occupied by the wife and the minor daughter until one month after the daughter achieved the age of eighteen years, at which time the home was to be put up for sale and the proceeds after deducting the expenses of sale were to be divided equally between the parties. In addition, the court awarded Mr. Pinkowski the checking account, the savings account, and the coin collection.

In addition to $80 a month support for Audrey during her minority, the court ordered that Mr. Pinkowski pay $70 a month alimony and the taxes on the property of $1,100 a year until the property was sold.

Other items such as two cars, household goods, and furniture, and insurance policies owned by each of the parties were not valued and their division by the court is not challenged in this appeal.

The court also found that the defendant had an interest in a pension fund with his employer and that were he to terminate his employment it would pay him $23,551. If Mr. Pinkowski should stay with the Falk Corporation until age sixty-five, the pension fund would pay him $347 per month, which added to his social security would give him $596 per month.

The trial court in its directions for findings of fact and conclusions of law said, "It is clear that Mr. Pinkowski should not be required to terminate his employment so that the proceeds of his retirement program would be available for division." We agree. However, the present value of the fund as determined by the trial court must

be included in the assets to be divided between the parties.

The trial court held that alimony should be awarded to Mrs. Pinkowski and said, "Provision for alimony is the only practical way under the circumstances of this case that Mrs. Pinkowski can have some benefit of her husband's pension system." The value of the pension fund was not included in the assets which were divided.

The plaintiff wife contends that the value of the pension should have been included.

The judgment in this case would put off for at least twelve years the time when Mrs. Pinkowski would receive any benefit from this asset, assuming Mr. Pinkowski stayed at Falk Corporation and retired at age sixty-five. If he should leave earlier and draw out the fund, she could very well get nothing from this asset.

This court first considered the value of pension plans and their inclusion for purposes of division of property in a divorce case in *Schafer v. Schafer* (1958), 3 Wis. 2d 166, 170, 87 N. W. 2d 803.

In *Schafer* at the time of the divorce Mr. Schafer was fifty-six years of age and for thirty-two years he had been an employee of the postal department and had made contributions of his salary to the federal civil service retirement fund. His interest in the fund at the time of the divorce had ". . . no realizable cash surrender value unless he separates himself from the postal service." No value was attempted to be placed thereon by the trial court; his contributions had amounted to $4,065.08 and at his then age of fifty-six he was eligible to retire and receive an annuity payable at the rate of $240 per month. However, if he waited until age sixty to retire, his annuity would yield him approximately $277 per month. The trial court gave no weight to the fact Mr. Schafer had an interest in the retirement fund. The question before this court was, should the retirement

fund have been taken into account in making a property division? This court concluded that it should have. The court stated that if Mr. Shafer's interest in the retirement fund was to be wholly ignored in making the property division, then there was no abuse of discretion on the part of the trial court in making the property division between the parties because independent of that interest the wife had been awarded one third of the net estate. But the court found that in view of the long married life of the parties and the many thousands of dollars of earnings which the wife had contributed to the support of the family that a more generous award would have been warranted. The court went on to say, pages 170, 171, "While it is true that the husband's interest in the retirement fund by its very nature is an asset that is incapable of division by the court between the parties so as to award the wife a portion thereof, nevertheless, we consider that its value should have been ascertained and taken into account by the trial court in making the division of estate." The court calculated that the value of the annuity under the statutory five percent annuity table was $29,000 at his age of fifty-six. The court said at page 171, "This value of $29,000 may be too high because apparently Mr. Schafer has no present intention of retiring. Until he retires, he will receive no income therefrom. Nevertheless, viewed from the standpoint of providing future financial security to Mr. Schafer it has an intrinsic value at least as great, if not greater, than would be provided to the wife if she were to be awarded the homestead. Where an asset such as this interest in a government retirement fund has no market value, its intrinsic value may have to be determined as best the court can in order to do justice between the parties." [1]

---

[1] The court in *Schafer* found the value of the homestead to be $17,800, page 168.

The court in *Schafer* found there had been no abuse of discretion in the award of $50 per month alimony but reversed the award of alimony as well as property division ". . . so that the trial court can exercise its discretion as to whether any alimony should be awarded in case the court should be of the opinion that the new division of estate to be made renders it advisable to dispense with alimony." (p. 172)

The next time this court considered the matter was in the case of *Schneider v. Schneider* (1961), 15 Wis. 2d 245, 112 N. W. 2d 584. In *Schneider*, the husband was forty-four years of age and was employed by the Falk Corporation. There the profit-sharing trust had deposited $5,000 to his retirement account and payments were to be made out of this account to him upon retirement or resignation or to beneficiaries at his death. The trial court had awarded the deposit in this fund to the husband but ordered him not to use or dispose of any portion of it until the children became self-supporting and ordered that he use it as security for payment of support money.

This court modified the judgment to award to the wife $2,000 which had been awarded by the trial court to the husband from a bank account and in so doing stated, page 248, "We have held that, although a husband's interest in a retirement fund cannot be divided between the parties, its value should be taken into account in making a division of estate." The court in *Schneider*, citing *Schafer*, further stated: "Doubtless the interest in the trust should be valued at a little less than that [$5,000] because [he] cannot withdraw the money at will."

In the case of *Kronforst v. Kronforst* (1963), 21 Wis. 2d 54, 123 N. W. 2d 528, the parties had approximately $60,000 worth of assets, among which the husband's interest in a profit-sharing trust amounting to $9,749 as

of the time of the divorce was included. This court stated the trust was properly included and pointed out that upon termination of his employment in the discretion of the trustees he would either be paid the total amount that he had credited to him in the trust or monthly instalments amortized over ten years; and if the latter plan, the payments would include any income to the trust which would accumulate during the period of the pay out. However, this court pointed out that the trial court in awarding the wife permanent alimony of $100 per month had stated in its memorandum decision that the husband's disability income of $121 per month " 'will be increased through payments from Pension Sharing Trust.' " This court stated that the trial court not only included the profit-sharing asset as part of the net estate awarded the wife on division but also included it as income in determining the amount of permanent alimony. This court said, page 64, "This clearly constituted error," and further, "We view the matter no differently than if the $9,749 had constituted cash in a bank deposit standing in defendant's name. Such an asset cannot be included as a principal asset in making division of the estate and then also as an income item to be considered in awarding alimony."

Here, Mrs. Pinkowski contends the trial court abused its discretion in awarding only $70 a month as alimony. At the time that alimony was set in this case the court found that Mr. Pinkowski had a take-home pay after income taxes and social security of $579 a month. The court then found that another $100 would have to be deducted to cover real estate taxes, insurance on the premises, and some medical expenses which he pays for allergy treatment for Audrey. This left $479 out of which he was to pay $70 alimony and $80 support, leaving him a balance of $329 a month. In addition the court ordered him to pay the sum of $2,300 in bills of the

parties; another $92 per month was being paid for housing accommodations for Mr. Pinkowski. In view of the circumstances then existing at the time that this judgment was entered, we do not find that there was an abuse of discretion in the alimony award to Mrs. Pinkowski.

In view of the fact that there are sufficient assets for the court to make a distribution to the wife out of the proceeds of the house after including the value of the pension fund, we reverse that portion of the judgment. The court may then exercise its discretion in determining what the division of the assets between the parties should be. The court may, on the other hand, impose a trust on the pension fund and require the husband to pay any part received into court. The court may determine either a percentage or a specific amount that the wife should receive of such fund and provide for payment to her of her share in lump sum or in instalments depending upon how the funds are eventually received by the husband. Thus the court may withhold distribution of a pension fund asset between the parties until the money is actually received when he retires.

The trial court was concerned with using the pension fund as a source of alimony payments in the future after the husband reached the age of sixty-five and retired. This was twelve years away from the time of the divorce. If the wife remarried within these twelve years, she would receive no benefit from the fund if it is regarded merely as a source for the payment of future alimony and was not included among the assets. In *Cary v. Cary* (1970), 47 Wis. 2d 689, 693, 694, 177 N. W. 2d 924, the husband, who the briefs on file show was sixty years old at the time of the divorce and was to retire at sixty-five, complained that the trial court improperly considered his interest in an employee retirement fund twice, once as a present asset and a second time as the sole source of his retirement income which, in the near

future, would be the only source for alimony payments. Because the trial court had made no findings of fact, this court could not consider the issue and remanded the case. However, this court pointed out:

". . . the trial court was not required to include in its alimony award an adjustment effective upon the plaintiff's retirement, . . . The adjustment required to meet the changed circumstance of retirement is best considered at the time of the event, when contingent possibilities such as substitute or supplementary employment will be before the court."

We also reverse the award of alimony as well as the property division so that the trial court can exercise its discretion as to alimony in view of the new division of estate to be made pursuant to this opinion. *Schafer v. Schafer, supra,* page 172.

*By the Court.*—Judgment affirmed, in part; reversed, in part; and cause remanded for further proceedings not inconsistent with this opinion.