BERTHA OLSON, APPELLANT AND CROSS-APPELLEE, v. LE ROY OLSON, APPELLEE AND CROSS-APPELLANT.
236 N. W. 2d 618

Filed December 18, 1975. No. 39957.

Padley & Dudden, for appellant.

Gary L. Scritsmier of Maupin, Dent, Kay, Satterfield, Girard & Scritsmier, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This case involves an appeal by the wife, Bertha Olson, and a cross-appeal by the husband, Le Roy Olson, from a decree entered by the District Court for Custer County, Nebraska, in an action brought by the appellant, Bertha Olson, against her husband, Le Roy Olson, for the dissolution of the marriage and for an equitable division of the property.

Although counsel for appellant sets out numerous assignments of error in his brief, he has conceded in his argument to the court that the only two questions involved in this appeal are the questions of the division of the property between the parties and of the allowance of attorney's fees. Specifically, appellant alleges that the court's division of the property was unfair in denying her a fair share of the marriage property and in failing to reinvest her with an inheritance in the amount of $14,000. She also alleges that the trial court failed to consider her contributions to the marriage from salary earned outside the home, and erred in awarding her

only $38,254, payable by her husband in 12 equal annual installments of $3,187.83, without interest except on delinquent payments. The husband, Le Roy Olson, has cross-appealed claiming that the property and alimony award is excessive and that temporary allowances paid to appellant while this appeal is pending should be applied to the permanent alimony award. We affirm.

The parties were married on January 4, 1944, at Broken Bow, Nebraska. At the time of the trial, Bertha was 49 years of age and Le Roy was 51 years of age. They have lived in Custer County, Nebraska, since their marriage, but have moved on numerous occasions. During their marriage, Le Roy was engaged in farming, trucking, and in operating a gravel business. Bertha, in addition to raising their children, engaged in various types of work, including working on the farm, at various schools, and also in stores and other business enterprises. Since 1972, she has been working as a bookkeeper in the Broken Bow High School and has also sold a line of cosmetics on her own. The record also reveals that she kept the books in her husband's gravel business and did other work in that business for approximately 10 years. A considerable portion of her outside earnings was used for family purposes. During the marriage she obtained $6,000 from her father which was used as a downpayment on the parties' farm. This sum was later deducted as an advancement from an inheritance of $14,184.97 from her father's estate. The balance of the inheritance, except for certain personal expenditures, as found by the court, was also contributed for family purposes.

With the above as a background, we now turn to an examination of the property, real and personal, owned by the parties at the time of the commencement of the action, and also examine the court's decree with respect to the division of property. In that decree, entered on December 9, 1974, the court, on the basis of evidence presented during the trial, statements of counsel, and authorities submitted, found that the assets of the par-

ties had a total net value of $66,625.61. It is unnecessary to itemize the assets, and their valuations, but three items included therein must be specifically noted, since their values were disputed at the trial. They are as follows: (1) A certain farm owned jointly by the parties, which was subject to indebtedness of $21,600 and to which the court assigned a net value of $63,400; (2) the residence owned jointly by the parties, valued by the court at $16,000, after deducting a $5,500 mortgage; and (3) the assets of Middle Loup Sand and Gravel Co., a business owned and operated by Le Roy Olson, to which, after consideration of outstanding debts, the court ascribed a value of *minus* $23,859.39.

In its decree, the court awarded Bertha a 1969 Plymouth automobile, certain furniture in her possession, and other items of personal property, with a total value of $4,825. The court awarded Le Roy the farm real estate, the residential real estate, certain life insurance policies and other personal property, subject to all indebtedness existing on such items, with a total net value of $60,300.61. A sum of $1,500 representing money in the District Court escrow account was not awarded to either party.

As previously stated, there was a dispute as to the value of the farm and residential property. Appellant contends that the trial judge totally ignored her appraisals of the value of the property and accepted only those of the appellee. Appellant also contends that there has been a great increase in the value of the real estate in question since trial was had in this matter, and that this court should take cognizance of that fact. We point out, however, that at the pretrial hearing the parties stipulated that their real estate should be valued as of the date of the trial, but that the value of all other property should be valued as of the date of the filing of the petition. Under the terms of that stipulation, we may not consider any increase in the value of the real estate which has occurred since the trial in this matter.

The trial court heard all the evidence presented relative to the value of the property comprising the estate of the parties, and we accept its conclusions. This court has said that while a divorce action is heard de novo in this court, the court will give weight to the fact that the trial court observed the witnesses and their manner of testifying, and accepted one version of the facts rather than the opposite. Seybold v. Seybold, 191 Neb. 480, 216 N. W. 2d 179 (1974); Tavlin v. Tavlin, 194 Neb. 98, 230 N. W. 2d 108 (1975).

We now consider the value of the property and other items awarded by the court to the appellant. We have already referred to the specific items of personal property set off to Mrs. Olson valued at $4,825. In 1963, Bertha received an inheritance of $14,184.97 from her father's estate, from which $6,000 previously used as a downpayment on the Olson's farm was deducted. Mrs. Olson claims that she is entitled to be reimbursed for the entire amount of $14,184.97, since it had been put into the family business. The court, however, awarded her only $10,684, excluding approximately $3,500, which it found from the record had been spent by Bertha on personal items. In addition, the court awarded her $27,570 as alimony. The decree ordered Le Roy to pay Bertha the total sum of $38,254, reflecting $27,570 as alimony and $10,684 as restoration of inheritance, in annual installments of $3,187.83. The court further provided that any delinquent payments should draw the legal rate of interest. When this award of $38,254 is added to the $4,825 in personal property, the total award to Bertha amounts to $43,079. This sum represents approximately 64.65 percent of the total assets of the marriage. Even excluding the $10,684 of inheritance returned to her, the percentage is still approximately 48.62 percent of the parties' assets. While it may be argued that the amount of $27,570, designated by the court as alimony in its decree, is a separate and distinct item from that of a division of property between the

parties, and should not be considered in determining the percentage of the total estate awarded to appellant, we recognize that adjustments in alimony are sometimes used to equalize awards to respective parties. In Corn v. Corn, 190 Neb. 383, 208 N. W. 2d 678 (1973), this court stated: "While a property division is technically distinct from alimony, the circumstances may well require that they be considered together." The same rule has been adopted in other states, including our neighboring state of Iowa. In the case of In re Marriage of Duane R. Novak and Betty A. Novak, 220 N. W. 2d 592 (Iowa, 1974), which involved an action brought by the husband for the dissolution of marriage under the Iowa dissolution of marriage law, the Supreme Court of Iowa stated: "Although alimony on one hand and allocation of property rights on the other are distinguishable and have different purposes in marriage dissolution proceedings, * * * they are still closely related in the matter of determining the amount to be allowed." Likewise, in Carlson v. Carlson, 178 Colo. 283, 497 P. 2d 1006 (1972), the court stated: "Alimony, support, and property settlement issues must be considered together to determine whether the court has abused its discretion."

The rule in this state is that the fixing of alimony or distribution of property rests in the sound discretion of the District Court, and, in the absence of an abuse of discretion, will not be disturbed on appeal. Wheeler v. Wheeler, 193 Neb. 615, 228 N. W. 2d 594 (1975). In appellant's brief, she contends that because of the duration of the marriage and her substantial contributions, financial and otherwise, to the marriage, she was entitled to a different property division. She urges that this court order a sale of the real estate, and, after the accounts and bills are paid from the proceeds, the balance be used, first, to reimburse her for her inheritance of $14,000, and the remainder be divided equally between the parties. Under the circumstances of this case, we cannot agree.

The record reveals that the gravel business has out-standing indebtedness of $99,728.76, which when added to the indebtedness on the other real estate results in a total indebtedness of approximately $127,263.74. While the amount which might be realized from a sale of the real estate and business is problematical, it is possible that it would be sufficient to pay off the indebtedness; but we conclude that the excess, if any, would be relatively small. A sale of the property does not seem to be the wisest choice of solutions. The 1973 income tax return filed by appellee reveals that the gravel business, for the first time, is showing a small amount of profit, although it is still heavily in debt. Rentals obtained from the farm property net about $2,500 annually. The 1973 income tax return, which is the latest return shown in the record of this case, shows that Le Roy Olson paid federal income tax in that year on an adjusted gross income of $15,808. To order the appellee, a 51-year-old man, to sell his business and real estate might deprive him of a means to earn a living and make it impossible for him to make the payments to his wife ordered by the court. This court has adopted the rule that where, in an action for dissolution of marriage, the wife is awarded a judgment for alimony the court should, if possible, divide the property in such a manner as to permit the husband the means of paying the judgment awarded the wife. Snow v. Snow, 190 Neb. 655, 211 N. W. 2d 719 (1973).

The record reveals that during her married life Bertha has earned substantial income while employed in various occupations. We assume that she has and will continue to be employed and supplement her income. It should also be remembered that should there be a substantial change in circumstances of the parties, either with respect to an increase in the income of the husband or a change in the condition of the wife, the provisions in this decree for alimony may possibly be subject to adjustment under the statutes of this state. We con-

clude therefore, that there was no abuse of discretion on the part of the trial court with respect to the property division and alimony provisions contained in its decree.

Appellant also challenges that portion of the decree which orders each party to pay his or her own attorney's fees. We point out, however, that Bertha had retained possession of $706.26 which she obtained by cashing a Travelers Insurance Company check made out to both parties. She had also withdrawn $400 from the joint bank account and had been granted $150 to pay a temporary attorney's fee. The trial court's power to award attorney's fees is discretionary and the court may well have believed that the property division would be unbalanced by requiring appellee to pay all attorney's fees. Tavlin v. Tavlin, *supra*.

One further matter requires consideration. Appellee, at the outset of the action, was ordered by the court to pay $150 per month as temporary support for his wife until the matter was heard and determined by the court. After the entry of the decree, and following a hearing, he was ordered to pay during the pendency of the appeal $375 per month as temporary support, commencing February 1, 1975. He urges that these latter sums be credited in partial payment of the alimony award. While we have on occasion permitted such procedure, we decline to do so in this case.

We conclude that the judgment of the District Court should be and hereby is affirmed.

AFFIRMED.