RAY L. HOWARD, APPELLANT, v. PEGGY JEAN HOWARD,
APPELLEE.

242 N. W. 2d 884

Filed June 9, 1976. No. 40429.

Carnazzo & Nanfito, for appellant.

Thomas R. Wolff, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Ray L. Howard, hereinafter referred to as Ray, appeals from the denial of his motion to vacate or modify a default divorce decree entered April 24, 1975. On June 13, 1975, on motion of Peggy Jean Howard, hereinafter referred to as Peggy, the decree was modified by a nunc pro tunc order of which petitioner had no notice. On

August 7, 1975, Ray filed a motion to vacate or modify. Two issues are presented. (1) The validity of the nunc pro tunc order. (2) Whether the decree should be vacated or modified. We reverse in part.

At the time of the marriage, Ray was a Second Lieutenant in the military service. He remained in the service until his voluntary retirement on July 31, 1967. At that time, he was a Major but was permitted to retire at his highest temporary rank, which was Lieutenant Colonel. He had 21 years in the service at the time of his retirement. His primary source of income since retirement and at the time of this action was his retirement income. At the time of the hearing it amounted to $876.71 gross. He had a net of $744 after deductions for taxes and insurance of $132.

The parties adopted two children, Richard Allen Howard, born March 15, 1959, and Jane Anne Howard, born January 19, 1967. Their custody was awarded to Peggy and that determination is not contested here.

Ray, who had not been a pilot in the Air Force, obtained a private commercial and instructor's license to fly small aircraft after his discharge. Thereafter, he bought a Cessna airplane and began an instruction and charter flight business.

Between 1964 and 1968, Peggy, who had 2 years of college, attended night classes until she had achieved 30 credit hours of accounting. She then passed the Nebraska Certified Public Accountants examination. She has worked as an accountant since 1968. At the time of the trial, her earnings were in excess of $900 per month gross.

In February 1974, Ray filed a petition for dissolution of the marriage in the District Court for Sarpy County where the parties lived. They remained in the same household until October 1974, when Ray moved out under court order. On advice of counsel, after the action had been on file for 10 months without the filing of a responsive pleading, Ray dismissed it without prejudice.

At the time of the dismissal, Ray was living in Douglas County. He subsequently filed a petition for dissolution in Douglas County. This is the action which went to decree. At a hearing on temporary support on January 9, 1975, Ray was ordered to pay $500 per month child support and $350 temporary attorneys' fees. He was brought before the court on a contempt citation on February 7, 1975, when the child support payments were not made.

The case was set for trial on April 21, 1975. In the interim, Ray had moved to Arkansas, and on March 25, 1975, filed another action for divorce in Van Buren County, Arkansas. This action was dismissed because he had failed to satisfy a 90-day residence requirement under Arkansas law. On April 17, 1975, Ray's counsel appeared and requested that he be permitted to withdraw because he had been discharged by letter. He asked that Ray be granted a continuance of the trial set for April 21. Counsel was permitted to withdraw. The court then extended the trial date until April 24, 1975. Ray was so notified.

On April 24, 1975, Ray was defaulted and evidence was adduced on behalf of Peggy. The court granted the dissolution and thereafter entered a decree. The decree ordered Ray to pay $250 per month for the support of each child during that child's minority, or a total of $500 per month. The residence of the parties, in which there was a substantial equity, was awarded to Peggy, subject to encumbrances. The personal property in the possession of each party was awarded to that party. The court ordered that control of the childrens' savings account, which the parties had been accumulating for their college educations, be turned over to Peggy, together with the life insurance policies on Ray's life. It was further ordered that Ray's life insurance policies name the children as irrevocable beneficiaries and that he submit to a physical examination for the purpose of allowing Peggy to further insure his life.

A 1966 Cessna airplane, which had been purchased for $7,000, on which there was an encumbrance of approximately $4,000, was awarded to Ray.

Peggy had no idea of Ray's income but testified that for a period in 1974 he deposited over $15,000 into his checking account from his charter flying and instruction business. This amount was gross. She had no idea of his expenses but felt that they were very low. The only other evidence adduced was that Ray netted $300 to $400 per month from the business.

The decree made a further finding that Ray had spent approximately 19 years in the military service while married to Peggy, or 90 percent of the time during which his military pension accrued. It further found that he was receiving approximately $876 per month and that he should pay to Peggy the sum of $350 per month as alimony until the earliest of the following dates: (1) The death of either party; or (2) 5 years after the remarriage of Peggy.

Peggy's counsel had developed the fact that Ray's major asset was his retirement income. He argued 90 percent of it was accumulated during the time of the marriage. Peggy asked the court for a portion of this pension as a part of her property settlement. She requested one-half of the percentage of the pension accumulated during the time of the marriage. Subsequent to this evidence, the court asked the following question: "Now, as I get your position, Mr. Wolff, you want a percentage of this pension awarded to Mrs. Howard, in effect, as a division of the property? MR. WOLFF: That's correct, Your Honor. We think it is the major asset of the marriage, and it was accumulated for their benefit." The court then developed the fact that Mrs. Howard was 46 years of age and her husband was 50, with a life expectancy of 23.63 years. From the record, it is evident the court accepted Peggy's premise in the allowance of $350 a month to her until Ray's death or 5 years after her remarriage.

In the original decree of April 24, 1975, paragraph 16 is as follows: "That Thomas R. Wolff, attorney for the Respondent, has expended a considerable amount of time and costs in this action, the previously filed action in Sarpy County, Nebraska, as well as the defense of the subsequent action which had been filed in Van Buren County, Arkansas, and for this service on behalf of the Respondent, said attorney should receive the amount of $4,000.00 as fees and taxable Court costs."

The last paragraph of the decreedal portion of the decree is as follows: "IT IS FURTHER ORDERED that Petitioner shall pay to Thomas R. Wolff, attorney for the Respondent, the sum of $4,000.00 as attorney fees and taxable Court costs, the same to be in addition to the amount heretofore awarded as temporary attorney's fees."

On June 12, 1975, Peggy, by her attorney, filed an application to nunc pro tunc the decree previously entered. That application, so far as material herein, reads: "a) That the last paragraph of said Decree allowing attorney fees to Thomas R. Wolff be eliminated and the $4,000.00 awarded therein be awarded to the Respondent as alimony/property division set forth in the Decree and thus the Decree should read . . . . '6. That Petitioner and Respondent have been married for twenty-six years during which time Petitioner spent approximately nineteen years in the military service. That Petitioner spent 7,699 days in the military service during which he was married to the Respondent for 6,926 of said days or 90% of the time during which the pension accrued. The Petitioner is receiving at this time approximately $876.00 per month from said pension and he will receive this for the remainder of his life. That Petitioner should pay to Respondent the sum of $350.00 per month as alimony until the earliest of the foregoing dates:

1) The Death of either party.
2) Five (5) years after remarriage.

"That in addition thereto, Petitioner shall pay to Respondent the sum of $4,000.00 as alimony/property settlement to help maintain Respondent on her attorney fees.'

"That the order clause should read on Page 4, of said Decree as follows:

" 'IT IS FURTHER ORDERED that Petitioner shall pay Respondent as alimony, the sum of $350.00 per month, said sum to remain due each month hereafter until further order of the Court, until the death of either party or until five (5) years after Respondent remarries. Petitioner is hereby ordered to pay, in addition to all other sums hereunder, the sum of Four Thousand Dollars ($4,000.00) as alimony/property settlement to be paid to Respondent on payment of attorney fees.' "

This application was filed June 12, 1975. A decree nunc pro tunc was entered the next day, June 13, 1975, without notice to Ray, who then was residing in Arkansas. The decree was nunc pro tunced to include the exact language set out above in the application.

We first consider the decree nunc pro tunc. It is obvious it is a nullity. Section 25-910, R. R. S., 1943, provides where notice of a motion is required, and it is in this instance, it shall be served a reasonable time before hearing. This was not done. However, there is another reason why the action is a nullity. It was not appropriate herein. The sole and only scope and purpose of a nunc pro tunc order or decree is to make the record speak the truth, not to change or amend it. We held in O'Grady v. Volcheck (1947), 148 Neb. 431, 27 N. W. 2d 689: "The purpose of a nunc pro tunc order is not to correct, change, or modify affirmative action previously taken by the court." It is evident the sole purpose of this nunc pro tunc order was to modify the decree to permit the plaintiff and her attorney to resort to garnishment against Ray's retirement income in an attempt to collect the attorney's fee.

We next consider the question whether the decree should be vacated. We are in full agreement with the trial court. Ray's conduct in permitting the default herein and otherwise militates against the vacation of the decree. It may be unfortunate for him, but he had his opportunity for his day in court. He has shown no cause why the decree should be vacated.

On modification, a more serious question is presented. Section 42-365, R. S. Supp., 1974, is as follows: "When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. Reasonable security for payment may be required by the court. Unless amounts have accrued prior to the date of service of process on a petition to modify, *orders for alimony may be modified or revoked for good cause shown,* but when alimony is not allowed in the original decree dissolving a marriage, such decree may not be modified to award alimony. Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient." (Emphasis added.)

Section 42-365, R. S. Supp., 1974, provides orders for alimony may be modified or revoked for good cause shown. It is obvious from the record Peggy's attorney and the trial court were proceeding on the wrong premise in considering Ray's pension as a joint fund for the benefit of both parties. A pension of one party to a marriage, unless its terms provide otherwise, is not a joint fund for the benefit of the other party and is not

ordinarily subject to division as part of a property settlement. It is obvious the allowance of $350 a month for Peggy, to continue until Ray's death or 5 years after Peggy's remarriage, while called alimony, was premised on this theory. There are situations where retirement income must be considered in providing for the care and maintenance of the divorced wife. In those situations, it is considered as a source for the payment of alimony, not as a part of a property settlement. Such a situation is found in Albrecht v. Albrecht (1973), 190 Neb. 392, 208 N. W. 2d 669. The present case, however, is not one of them.

On the record, Peggy received the major share of the accumulated property. The Cessna aircraft, which was set off to Ray had a minimal equity. It eventually was assigned over for the balance due. At the time of the modification hearing, Ray was unemployed. He was unable to fly or teach because of a sinus condition. The record does not disclose whether this was a temporary or permanent condition, but that point is not material on the question now before us. On the record, he was dependent upon his pension which was not available to him because of the garnishment issued in an attempt to collect the attorney fee under the nunc pro tunc order. The evidence is undisputed, Ray had made his child support payments through April 15, or until garnishment tied up his pension checks.

While we do not modify the child support allowance, it is evident the court did not consider the mother's ability in fixing the allowance. We held in Kockrow v. Kockrow (1974), 191 Neb. 657, 217 N. W. 2d 89: "In the matter of child support while the father had the primary responsibility to support his children, the trial court should not ignore the ability of the mother. It has the responsibility of adjusting the equities between the parties." The record does support the inference that Ray was willing to contribute $250 per month for the support of each child.

The record indicates by the time of the decree Peggy's gross income had grown to more than $900 per month and was still rising. She was given the equity in the home and all furnishings in the house except certain guns, stereo, and radio equipment which had been taken by Ray. The alimony order entered was arbitrary, unreasonable, and confiscatory. It is very apparent that the decree not only takes his entire pension but actually exceeds the net amount of the pension considering deductions for income tax.

Our law is clear. "When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, and the ability of the supported party to engage in gainful employment." Albrecht v. Albrecht (1973), 190 Neb. 392, 208 N. W. 2d 669.

We conclude good cause was shown for modifying the order for alimony. We determine that the alimony payments provided in the decree should terminate with the April 1976 installment. No further alimony shall be due or payable after April 30, 1976.

For the reasons stated, the nunc pro tunc order of June 13, 1975, is vacated and held for naught. The judgment of the trial court denying the vacation of the divorce decree is affirmed. The judgment of the trial court denying the modification of the decree is reversed as to the alimony allowance, which is to terminate on and after April 30, 1976. In all other respects, the judgment is affirmed. Court costs and attorney's fees herein are taxed to the party incurring the same.

AFFIRMED IN PART, AND IN PART REVERSED.