NANCY LEE KULLBOM, APPELLANT, V.
TERRENCE L. KULLBOM, APPELLEE.

306 N.W.2d 844

Filed June 12, 1981. No. 43189.

Warren S. Zweiback of Zweiback, Brady & Kasher, P.C., for appellant.

Steven J. Lustgarten of Lustgarten & Roberts for appellee.

Heard before BOSLAUGH, MCCOWN, CLINTON, and BRODKEY, JJ., and COADY, District Judge.

BRODKEY, J.

Nancy Lee Kullbom (Nancy), petitioner-appellant herein, has appealed to this court from a decree entered by the District Court of Douglas County, Nebraska, dissolving the marriage of the petitioner and Terrence L. Kullbom (Terrence), the respondent-appellee. In its decree entered on December 14, 1979, the trial court found that the marriage between the parties was irretrievably broken and dissolved the marital relationship. The court awarded custody of the minor children, Nick, Kelly Sue, and Matthew, to the petitioner, subject to reasonable rights of visitation by Terrence; ordered Terrence to pay child support in the sum of $250 per child per month until such time as the minor children attain majority, become emancipated, or die, or until further order of the court; and required Terrence to continue medical and health insurance in effect for the children and pay all uninsured medical and dental expenses. The court awarded the residence of the parties in Omaha, Nebraska, to Nancy and required her to assume and pay the mortgage on said property. The court also awarded to Nancy all the furniture and household items located in the residence; her jewelry; a 1978

Malibu station wagon, subject to a lien thereon; title to a life insurance policy; a coin collection; and a racehorse known as "Burnham" owned by the parties. The court further ordered Terrence to pay Nancy alimony in the amount of $1,500 per month for 121 months or until the death or remarriage of the petitioner. The court also required Terrence to maintain in full force certain life insurance policies in favor of the petitioner and minor children to the extent of the alimony and child support obligations.

In its decree, the court awarded to Terrence all his jewelry, personal effects, and household items located in his apartment; a 1979 Datsun, subject to a lien thereon; title to four life insurance policies; all rights, if any, to acquire certain football tickets to attend home football games of the University of Nebraska at Lincoln; and any rights to obtain certain season ticket seats to attend horseraces at Ak-Sar-Ben. In addition, Terrence was awarded all of the parties' interest in pension and profit-sharing plans maintained by Oral Maxillo-Facial Surgeons, Inc.; all common stock of said corporation owned by the parties; and all interest of the parties in certain investment partnerships known as Chanticleer Realty Associates, Ltd., and Blackstone, Ltd. Terrence was ordered to pay all the outstanding indebtedness incurred by the parties prior to December 1, 1979, and was relieved of all mortgage obligations upon the house and the payment of the lien upon Nancy's automobile. Finally, Terrence was ordered to pay attorney fees and costs to Nancy's attorney in the amount of $11,480, as well as those of his own attorney.

In her brief on appeal, Nancy makes the following assignments of error: (1) That the court erred in awarding her less than an equitable share in the property owned by the parties; (2) That the alimony awarded to her is inadequate in light of the circumstances of the parties; (3) That the child support award is inadequate in light of the circumstances of

the parties; and (4) That the court erred in not considering as a marital asset the husband's vested interest in pension and profit-sharing plans.

The factual background of this appeal, as revealed in the record, indicates that the parties were married in Gibbon, Nebraska, on September 7, 1963. At the time of their marriage, Terrence was a dental student, with no earnings and a negative net worth of between $5,000 and $10,000. Nancy had recently graduated from nursing school, and upon their marriage the parties moved to Iowa City, Iowa, where Terrence attended the dental school at the University of Iowa. Nancy became employed at the University Hospital and worked to support the parties. The couple's first child, Nick, was born on August 2, 1964. Terrence graduated from dental school in June of 1966, at which time he joined the armed services and was stationed in northern California until his discharge in 1968. During this period, the parties' second child, Kelly Sue, was born on October 23, 1968. Upon his discharge from the service, Terrence entered private practice in Sturgis, South Dakota, where he remained for 1 year. Thereafter he was accepted into an oral surgery residency program at the University of Nebraska at Omaha in 1970. After the parties moved to Omaha in May of 1970, Nancy returned to work as a nurse in local hospitals while her husband completed the residency program. Terrence completed his residency in May of 1973, at which time he became employed by his present employer, Oral Maxillo-Facial Surgeons. Nancy then quit working as a nurse, and the parties' third child, Matthew, was born on December 27, 1973.

It is well established that dissolution of marriage cases are tried de novo on the record; however, this court, in reaching its decision, will give weight to the fact that the trial court observed the witnesses and their manner of testifying, and accepted one version of the facts rather than the opposite. *Witcig v. Witcig,* 206 Neb. 307, 292 N.W.2d 788 (1980); *Boroff v. Boroff,*

204 Neb. 217, 281 N.W.2d 760 (1979). Although alimony and allocation of property rights are distinguishable and have different purposes in marriage dissolution proceedings, they are still closely related in the matter of determining the amount to be allowed, and circumstances may require that they be considered together to determine whether the court has abused its discretion. *Olson v. Olson*, 195 Neb. 8, 236 N.W.2d 618 (1975). See, also, *Burton v. Burton*, 205 Neb. 865, 290 N.W.2d 658 (1980); *Ragains v. Ragains*, 204 Neb. 50, 281 N.W.2d 516 (1979); *Sullivan v. Sullivan*, 192 Neb. 841, 224 N.W.2d 542 (1975). In determining what percentage of the marital estate each person is to receive, the court must consider all pertinent facts in reaching an award that is just and equitable. *Chrisp v. Chrisp*, 207 Neb. 348, 299 N.W.2d 162 (1980); *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980). The court, in dividing the property, must take into consideration the circumstances of the parties, the duration of the marriage, the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. Neb. Rev. Stat. § 42-365 (Reissue 1978). See, also, *Buker v. Buker*, 205 Neb. 571, 288 N.W.2d 732 (1980); *Ragains v. Ragains, supra.*

Nancy first assigns as error the action of the District Court in dividing the marital estate of the parties. The record discloses that both Nancy and Terrence have individually and jointly contributed property and other valuable services to the marriage. The parties were both 39 years of age at the time of trial and had accumulated a net worth of approximately $260,000 during their marriage. The property acquired by the parties during their 16 years of marriage comprises the bulk of the parties' marital

estate. In view of the fact that both parties contributed substantially to the acquisition of the marital estate, we believe each party is entitled to one-half of the value or equity of the property in that estate. *Chrisp v. Chrisp*, 207 Neb. 348, 299 N.W.2d 162 (1980). A review of the record convinces us that a fair and equitable division of the marital estate has not been made. At trial, it was established that Terrence has an annual income in excess of $100,000. His income includes an annual car allowance of $6,000, a salary of approximately $75,000, and an annual contribution from his employer to his pension and profit-sharing plans of $18,500. In addition, the respondent earns approximately $5,500 in stipends as a part-time instructor at Creighton University and the University of Nebraska Medical Center. The petitioner, on the other hand, has not been employed outside the home since 1973. At the time of trial, according to the evidence and by stipulation of the parties, Terrence's interest in the pension and profit-sharing plans totaled $75,133.25, which the trial court awarded him in its decree. In addition, he was awarded the parties' interest in Oral Maxillo-Facial Surgeons, Inc., the value of which was in dispute and contested, and ranged from a minimum of $48,000 to a maximum of $116,000, depending on whether outstanding accounts receivable were included in computing the book value of the corporation. He was also awarded the parties' partnership interests in Chanticleer Realty Associates, Ltd., and Blackstone, Ltd., which were valued at $54,400 and $15,000, respectively.

Nancy, however, was awarded the parties' residence in Omaha, which was valued at $97,650, but which is subject to a mortgage of $69,747. This results in a net award to the petitioner of $27,903 of equity in the house.

Nancy contends that the trial court erred by not considering the respondent's pension and profit-sharing plans as part of the marital estate, subject

to division by the court. This contention necessitates an examination of the law of this state with reference to pensions and pension plans as marital property. As late as May 28, 1980, this court followed the rule that a pension of one party to a marriage, unless its terms provide otherwise, is not a joint fund for the benefit of the other party and is not ordinarily subject to division as part of a property settlement, but may be considered as a source for the payment of alimony. *Witcig v. Witcig, supra.* See, also, *Andersen v. Andersen,* 204 Neb. 796, 285 N.W.2d 692 (1979); *Howard v. Howard,* 196 Neb. 351, 242 N.W.2d 884 (1976). However, in 1980 the Nebraska Legislature added subsection (8) to Neb. Rev. Stat. § 42-366 (Reissue 1978), which became effective July 19, 1980; and § 42-366(8) (Cum. Supp. 1980) now provides: "If the parties fail to agree upon a property settlement which the court finds to be conscionable, the court shall order an equitable division of the marital estate. *The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested.*" (Emphasis supplied.) It now appears, therefore, that by virtue of the action of the Legislature, the law of this state now requires that pension plans and retirement plans shall be included as part of the marital estate for the purposes of the division of property at the time of dissolution. In *Witcig v. Witcig,* 206 Neb. 307, 292 N.W.2d 788 (1980), we pointed out the problems inherent in the determination of the value of pension interests and the contingent nature of such interests, and as a result thereof in that case decided to follow our previous rule as announced in *Howard v. Howard, supra.* Other courts which have followed the new rule announced by the Nebraska Legislature have experienced problems in determining the valuation of pension rights for the purpose of the

division of marital property in dissolution actions. In *Bloomer v. Bloomer,* 84 Wis. 2d 124, 129-35, 267 N.W.2d 235, 238-41 (1978), the Supreme Court of Wisconsin stated: "Although it is settled that pension rights must be considered, trial courts are presented with a complex task in properly valuing the rights in those plans. . . .

"The problem of valuing prospective benefits under a pension plan is frequently exacerbated by the fact that unmatured rights may be terminated by death, discharge, or other contingencies. [Citations omitted.] Valuation is further complicated by the dual nature of most pension plans. If the employee continues to work until retirement, the payments to the employee, to the extent derived from employer's contributions, are in the nature of deferred compensation. If, however, the employee terminates work before retirement age, the usual plan provides at least for the return of employee contributions. . . . A variety of methods of valuation have been approved in the individual cases, without any analysis of the proper theory for valuing the asset. . . .

. . . .
"None of what we have said detracts from the fact that the trial court retains broad discretion in valuing pension rights and in dividing them between the parties. . . .

. . . .
". . . There are at least three ways in which the value can be determined. Whether any one of these methods is an appropriate exercise of discretion depends upon the circumstances of the case, the status of the parties, and whether the result is a reasonable valuation of the marital asset." The court in *Bloomer* proceeded to discuss the three methods referred to, the first being that the court could consider the amount of the employee's contributions to the fund plus interest and award the wife an appropriate share. Second, the trial court could attempt to calculate the present value of the

employee's retirement benefits when they vest under the plan, stating that under either of the first two methods the trial court would have the discretion to order the payment to the wife of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method referred to by the court, which it states has been used widely in other states and is referred to as an alternative in *Pinkowski v. Pinkowski*, 67 Wis. 2d 176, 226 N.W.2d 518 (1975), is to determine a fixed percentage for the wife of any future payments the husband receives under the plan, payable to her as, if, and when paid to the husband. With reference to this third plan, the court in *Bloomer* states at 136, 267 N.W.2d at 241: "Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled."

In *Pinkowski, supra* at 184, 226 N.W.2d at 522, the court stated: "In view of the fact that there are sufficient assets for the court to make a distribution to the wife out of the proceeds of the house after including the value of the pension fund, we reverse that portion of the judgment. The court may then exercise its discretion in determining what the division of the assets between the parties should be. The court may, on the other hand, impose a trust on the pension fund and require the husband to pay any part received into court. The court may determine either a percentage or a specific amount that the wife should receive of such fund and provide for payment to her of her share in lump sum or in instalments depending upon how the funds are eventually received by the husband. Thus the court may withhold distribution of a pension fund asset between the parties until the money is actually received when he retires."

In the instant case, however, we have no problem with the valuation of the pension and profit-sharing

trusts, as the parties have stipulated their value to be $75,133.25. The appellee contends, however, that the court "obviously" took the value of the pension and profit-sharing trusts into account when considering the amount of the alimony award. While it is, of course, possible that the court did consider the value of the trusts, it is not at all clear from the record that it did so, particularly in view of the fact that, although the court divided and allocated the property between the parties in its decree, it did not place any specific values upon the items awarded to each party. We conclude that an equitable division of the marital property requires that Nancy be awarded 50 percent of the stipulated value of the trusts in question, in the amount of $37,566.75. However, since it is obvious that the appellee will not receive the value of such trusts until some unspecified time in the future, we conclude that he should not be required to pay Nancy the additional sum represented by her share of the trusts until he receives it, particularly in view of the fact that she has been awarded other specific property from the marital assets. This is not to say, however, that the respondent may not, if he chooses, pay Nancy the sum referred to in a lump sum, or by installments, prior to the time that he receives the benefits from the two trusts, for whatever reason.

Another matter which must be considered in connection with the property division between the parties is the action of the trial court in awarding Nancy the racehorse, Burnham, which the evidence in the record establishes has a value of $6,000. It is Nancy's contention that this racehorse should have been awarded to Terrence and that she should be awarded the value of the animal. The evidence in the record shows that Terrence bought the horse for the purpose of training it to become a racehorse. The witness, O. J. Glass, farm manager and horse trainer at the Glass & O'Day Stables, testified that the cost of maintaining the horse could be as high

as $500 per month if it is placed into training. Because of the expense involved in training the horse, and the substantial expense in feeding it, we conclude that in this case Nancy is fully justified in looking this gift horse in the mouth and objecting to that part of the award by the trial court. We therefore conclude that Terrence should be awarded the horse, Burnham; and, in lieu thereof, Nancy should be awarded the value of the horse in the amount of $6,000.

Appellant also contends that the award of the trial court with reference to the amount of child support and alimony is too low. Our review of the record convinces us that the trial court did not abuse its discretion in the amount awarded for these purposes and that we should not disturb such award on appeal to this court.

Appellant has also requested an award of an attorney fee for the services of her attorney in this court. We note that the trial court awarded an attorney fee for services in that court in the amount of $11,480, of which amount $10,000 represented an attorney fee and $1,480 costs and expenses. The trial court was apparently convinced of the value of her attorney's services after a hearing to set the amount of the fee. At that hearing appellant's attorney introduced into evidence a very itemized and detailed statement of the amount of the time devoted by him and by his associate in this dissolution action, as well as the hourly rates customarily charged for the services of each of them. The amount of the fee awarded by the trial court is not an issue in the appeal to this court. A review of the record convinces us that much of the work required in an appeal to this court was already performed in connection with the trial in the District Court. We are of the opinion that the appellant should receive an additional amount of $2,000 for the services of her attorney in appealing the case to this court.

Except as modified above, the decree entered by the trial court should be, and hereby is, affirmed.

AFFIRMED AS MODIFIED.

COADY, District Judge, dissents.

McCOWN, J., concurring.

Some cautionary comments may be appropriate in this case. Here the value of the pension was stipulated and the methods of valuation discussed in the opinion are those which have been approved by various courts. Rights under pension contracts vary greatly and in most cases the court has no power to alter the terms of the contract or provide for its payment in any fashion other than that required by the contract. The terms of the pension contract also affect the valuation of the pension itself.

The majority opinion does not require any specific methods of valuation to be used by the District Court nor restrict its broad discretion in valuing pension rights. Neither does the majority opinion imply that pensions themselves must be divided in kind between the parties but only that the value of any pension or retirement plan shall be included as a part of the marital estate.

CLINTON, J., joins in this concurrence.