JUDY A. NEUJAHR, APPELLEE, V. DANNY L. NEUJAHR, APPELLANT.

393 N.W.2d 47

Filed September 5, 1986.   No. 85-388.

Carole McMahon-Boies of Pepperl & Melcher, P.C., for appellant.

David L. Kimble of Souchek & Kimble, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal involves the question of whether one may obtain an interpretation of a decree by merely filing a motion requesting the court which initially entered the decree to interpret its own decree after the decree has become final.

This is the second time this case has been before us. In May of 1982 the appellee, Judy A. Neujahr, and the appellant, Danny L. Neujahr, separated, and Ms. Neujahr soon thereafter filed a petition for dissolution of the marriage in the district court for Seward County, Nebraska. On March 11, 1983, a decree of dissolution was entered. The decree provided, in relevant part:

> Petitioner [Judy A. Neujahr] is hereby awarded the follow-described [sic] personal property: 1980 LeBaron automobile; all cash in checking accounts, savings accounts, and safety deposit boxes registered in petitioner's name; an Internal Revenue Service refund; all household goods except items specifically awarded the respondent; a Weed Eater; chain saw; chimney brush; electric drill and her clothing and personal effects and the clothing and personal effects of the minor children of the parties.
>
> Respondent [Danny L. Neujahr] is hereby awarded the following-described personal property: 1968 Ford Pickup; 1972 Plymouth automobile; 1975 Toyota; 1930 Model A Ford; trailer house; United States Postal Service Pension; all cash in checking accounts, savings accounts, and safety deposit boxes registered in respondent's name;

United States Postal Service Credit Union Account; all American Mutual Life Insurance Policies; all notes and accounts receivable; all tools, machinery and livestock equipment not specifically awarded to the petitioner; mixer and mixer bowl set; wood chairs; shoe shine kit; all guns and fishing equipment; personal effects and clothing of the respondent; radio; stereo equipment; bed, frame and mattress; roll top desk; kitchen accessories; towels and linens; antique telephone; buffet; pinball machine; juke box; and miscellaneous items in his possession.

Although much of the couple's personal property was specifically awarded in the decree, disputes immediately arose between the parties concerning their separate claims to many items not specially included in the decree. Ms. Neujahr filed two motions to cite Mr. Neujahr for contempt, claiming that Mr. Neujahr was refusing to deliver to her personal property awarded to her by the decree. One of those hearings resulted in the district court's entering a supplemental order. That order was appealed to this court and is found in *Neujahr v. Neujahr*, 218 Neb. 585, 357 N.W.2d 219 (1984) (*Neujahr I*). In reversing the supplemental order entered by the district court in *Neujahr I*, we said at 588, 357 N.W.2d at 221-22:

[W]here modification of a dissolution decree is made during the 6-month period, § 42-372, such modification can be made only upon good cause shown, after notice to all interested parties and hearing. Absent notice and hearing, the July 11 order was void, and it is set aside. There being no evidence to support petitioner's contempt motions, the judgment of the district court is reversed with directions to dismiss the motions.

In deciding the matters in *Neujahr I*, we used some language which probably created some of the confusion in this case. We said specifically at 587, 357 N.W.2d at 221: "In their dispute the parties made no formal application to the court for either interpretation of the decree, *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963), or modification of the decree, Neb. Rev. Stat. § 42-372 (Reissue 1978)." It is true that in *Kasparek v. May*, 174 Neb. 732, 740, 119 N.W.2d 512, 518 (1963), one may find some language to the effect that "[i]f there was any

question as to what the 1956 decree meant, it was possible for May to have secured a judicial interpretation of the decree." In neither *Kasparek* nor *Neujahr I*, however, did we indicate any specific procedure to be followed in seeking an "interpretation." Ms. Neujahr concluded that all she need do is file a motion setting out the disputed portion of the decree, the fact that "a disagreement has arixen [sic] between the parties," and a request that the court interpret its earlier decree, even though the decree was, at the time the request was made, already final. She then attached to that motion a list of some 49 items of personal property, which she alleged in her motion the decree did not specifically mention and therefore it was not clear if said items are "household goods," "machinery and tools," or "miscellaneous items" in the possession of the respondent. The items listed on exhibit A were such as "ping pong table," "decorative house trim," "trash barrel," "TV stand," "1980 state & federal tax return check," and "1 - hay rope." The district court then proceeded to hold a hearing, at which the parties appeared in person and with counsel and gave testimony as to what it was they believed the district court meant when it entered its decree. The court then, apparently based upon the evidence of what the parties believed the judge meant when he entered his decree, expanded upon his decree by specifically assigning the 49 contested items to either Ms. Neujahr or Mr. Neujahr.

We regret that we must once again reverse and dismiss the proceedings. We do so because there simply is no procedure authorizing what was done in the current action.

If no attempt is made to have an appellate court review the decree within 6 months after it is entered, Neb. Rev. Stat. § 42-363 (Reissue 1984), the decree becomes final. As such, it is res judicata as to the rights of the parties. *Wharton v. Jackson,* 107 Neb. 288, 185 N.W. 428 (1921). Only in rare instances is the final decree vulnerable to attack.

> [J]urisdiction of the court in matters relating to divorce and alimony is given by statute, and every power exercised by the court in reference thereto must look to the statute or it does not exist. [Citation omitted.] We cannot change it; we must therefore take the decree as we find it, inasmuch

as the interested parties have made no move to change it but have treated it as final.

*Wharton v. Jackson, supra* at 291, 185 N.W. at 429. This is so because the finality of a judgment must be respected in order to insure the rights of the parties.

Litigation must be put to an end, and it is the function of a final judgment to do just that. A judgment is the final consideration and determination of a court on matters submitted to it in an action or proceeding. [Citation omitted.]

If a judgment can mean one thing one day and something else on another day, there would be no reason to suppose that the litigation had been set at rest. The same must be said if the judgment can mean one thing to one judge and something else to another judge. All are bound by the original language used, and all ought to interpret the language the same way. No court should express an opinion of what the judgment means until the judgment is called into question by some factual situation relating thereto. The judge who tried the case and who ought to know what he meant to say, after the time for appeal, etc., has passed cannot any more change or cancel one word of the judgment than can any other judge.

*Crofts v. Crofts*, 21 Utah 2d 332, 335, 445 P.2d 701, 702-03 (1968). See, also, *Fender v. Fender*, 249 Ga. 773, 294 S.E.2d 474 (1982).

In addition to direct appeal to this court, Nebraska law is replete with methods available to a litigant such as Ms. Neujahr. If the error is a clerical error or a scrivener's error, then the procedure is to file a petition seeking to correct the judgment nunc pro tunc. See *Howard v. Howard*, 196 Neb. 351, 242 N.W.2d 884 (1976). If the circumstances are such that the decree should be modified, then a proper petition for modification must be filed. See, Neb. Rev. Stat. §§ 25-2001 (Reissue 1985) or 42-372 (Reissue 1984). If one of the parties has property which properly belongs to the other under the terms of the decree, then that individual may obtain possession of the property by filing a replevin action, see Neb. Rev. Stat. §§ 25-1093 and 25-10,110 (Reissue 1985), or by citing the other individual for

contempt of court, see Neb. Rev. Stat. § 25-2121 (Reissue 1985). In each instance, the issue will be who is entitled to the property. In arriving at the answer to that question, the court having the matter then before it will attempt to resolve the question based upon the language of the decree and the evidence then presented. That may require some "interpretation" of the decree, but the interpretation will be based upon the language of the decree and not based upon what the parties believed the court meant but did not say. Except for a modification resulting from a material change of circumstances, none of the procedures available permit a tampering with the words of the original decree which has become final.

It is true that several jurisdictions "appear" to have authorized a procedure such as that suggested by Ms. Neujahr in the instant case. In particular, the case of *Palmi v. Palmi*, 273 Minn. 97, 140 N.W.2d 77 (1966), is cited to us. In *Palmi, supra*, the Minnesota court said at 102-03, 140 N.W.2d at 81: "[W]here judgment is ambiguous or indefinite in its terms a party might move the court for an order for its interpretation and clarification and it is within the province of such court to hear and determine the motion . . . ." An examination of the *Palmi* case makes it clear, however, that the authority relied upon by the Minnesota court was not well placed.

In reaching its conclusion in *Palmi* the Minnesota Supreme Court relied upon Annot., 67 A.L.R. 828 (1930), and a decision entitled *First Trust & Sav. Bank v. United States F. & G. Co.*, 163 Minn. 168, 203 N.W. 612 (1925). The A.L.R. citation, however, reads in part as follows: "The power of a court to correct clerical errors and misprisions in its own records, even in final judgments and decrees, so as to make them truthfully state what actually occurred and was decided, has often been asserted to be inherent, existing independently of statute." 67 A.L.R. at 832. The *First Trust* case likewise only concedes that a court has the inherent power to correct *clerical* errors in its decrees and says nothing about correcting alleged *substantive* errors or omissions. While we have no quarrel with that, we note that in Nebraska that procedure is accomplished by a petition seeking to correct the judgment nunc pro tunc and not

by a motion to interpret. We believe that the Minnesota court was simply in error in concluding that such a procedure exists. Other courts which have given lipservice to such a procedure have, in reality, modified the decree to provide for a situation not contemplated by the parties and therefore omitted from the original decree. See, *Wastvedt v. Wastvedt*, 371 N.W.2d 142 (N.D. 1985); *Walker v. Walker*, 327 Mich. 707, 42 N.W.2d 790 (1950). By whatever name, however, the procedure is one to modify a decree because the decree fails to address the issue (see *Wastvedt v. Wastvedt, supra*, Levine, J., concurring).

If we were to follow the procedure suggested by Ms. Neujahr, the only appropriate and proper witness would be the judge who entered the order. That judge then would change the decree so that, in light of a problem that has later arisen, the decree would conform to what it is he or she originally meant. Obviously, what the parties thought the judge meant is of no moment in interpreting the decree. Yet, the fact is that neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant.

There are, obviously, instances when a decree is ambiguous and parties are left at their peril to know what they are authorized to do. When that situation arises, the parties must bring some form of action which raises the issue and thereby requires the court before whom the matter is then pending to resolve the issue as a matter of law in light of the evidence and the meaning of the decree as it appears.

What the district court did in the instant case was simply to enter a modified supplemental decree, without authority, after the decree had already become final. For that reason the order of the district court entered on April 26, 1985, must be set aside and the cause remanded with directions to dismiss. Appellant is awarded the sum of $500 to apply upon his attorney fees.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

BOSLAUGH, J., dissenting.

Although I agree with many of the statements contained in the opinion of the court, I think little is gained by reversing the

judgment and remanding the cause with directions to dismiss.

There appears to be a genuine controversy between the parties as to the meaning of some of the language of the decree in the dissolution proceeding. I think the better rule is that such a controversy can be resolved by declaratory relief. See 26 C.J.S. *Declaratory Judgments* § 43 (1956).

The result which the court has reached in this case probably will occasion a further expenditure of judicial time and energy to settle a dispute which already has consumed more judicial time and energy than it merits. I would affirm the judgment.

HASTINGS, J., joins in this dissent.