### KELLY v. KELLY.

1. DIVORCE—HUSBAND AND WIFE—COMPROMISE BY PARTIES—AGREEMENT FOR SUPPORT—MODIFICATION—DECREE.

Where husband and wife agreed upon the amounts to be paid as permanent alimony, and for the support of an infant, incorporated in the decree for divorce, the court was authorized to entertain a petition to modify the decree by reducing the provision for the child, notwithstanding a clause in the contract between the parties, that such allowance and alimony should in no way be changed by petition or otherwise by either party. 3 Comp. Laws 1915, § 11417.

2. SAME—ALIMONY—CHANGE OF CIRCUMSTANCES.

But his remarriage after decree did not abate the husband's obligation to carry out its provisions relating to alimony.

3. SAME—DECREASE IN INCOME.

And where defendant husband had resigned from a position held by him and engaged in a business for himself, causing a diminution in his income, the court could rightly consider that fact and the remarriage in determining the question of changing the decree, and whether or not the alteration in his circumstances warranted a change in the order.

Appeal from Kent; Brown, J. Submitted October 3, 1916. (Docket No. 61.) Decided December 21, 1916.

Bill by Frank R. Kelly against Flora T. Kelly for a divorce: On petition of complainant for a modification of the decree respecting alimony. From an order granting temporary relief without amending the decree, petitioner appeals. Affirmed.

*H. Monroe Dunham* and *John M. Dunham,* for complainant.

*William F. McKnight,* for defendant.

In the circuit court for the county of Kent, in chancery, in the suit of Frank R. Kelly against Flora T. Kelly, defendant, for a divorce, on July 1, 1914, a decree was entered which recited that the material facts charged in the bill were found to be true, and the defendant guilty of the several acts of cruelty therein charged, and the marriage was dissolved, and the parties divorced. The custody of an infant son was awarded to the mother, the defendant, until he should attain the age of 14 years. It is further recited in the decree that defendant was entitled to an allowance as permanent alimony, that the parties had by a written agreement on file in the cause settled and

adjusted the amount thereof, subject to the approval and ratification of the court, that the provision made in said agreement for defendant appeared to be suitable and proper, and it was decreed that it be in all respects ratified, approved, and confirmed, and declared binding upon the parties as though incorporated in the decree. It was further ordered, adjudged, and decreed, in accordance with the terms of the said agreement, that complainant pay to the register of the court for the defendant $150 each three months in advance, the first payment to be due on the date of signing the decree, as permanent alimony, and that said sum should be paid every three months so long as the defendant should live or until she should be married; that complainant should, each and every three months, pay to the register of the court in advance for defendant the sum of $75 as permanent alimony for the support, care, and maintenance of the infant child until he attained the age of 14 years. The date of filing does not appear in the record as the rule requires that it should do, but it is assumed from the date of the jurat attached thereto that in September, 1915, the complainant in said divorce suit filed a petition in said court praying for a modification of the said decree in three respects:

"(a) That your petitioner may have the right to visit his son, Robert Edward Kelly, when he is in the city of Grand Rapids, but not oftener than once a month, and that during said time he may have the right to take said child with him, away from the home of the said defendant, for a period not over one-half day.

"(b) That your petitioner may be awarded the care and custody of said minor child during the months of July and August, when he will not be attending school, and for one week at Christmas time.

"(c) That the amount of money payable to the said defendant for the support and maintenance of said minor child may be reduced to an amount reasonable

and proper in consideration of your petitioner's income, different conditions, and business earnings, and that during the months the said minor child is with your petitioner that no payment whatever be required of him."

The petition sets up that an agreement was made and executed between the parties, adjusting and settling all property matters and alimony matters, which provisions were embodied in the decree; that petitioner had about $2,000 worth of household furniture and fixtures, which he gave to defendant, in order that she might make a home for the infant child; that defendant represented to petitioner that she would not and did not expect to live with her mother, and wanted to make a home of her own, where she could devote her time and attention to the rearing and training of the said infant child, which representations were in accord with petitioner's desire, and, relying upon the representations, he agreed to pay the sum of $75 a month to the defendant, one-third of which sum was for the support, care, and maintenance of the said minor child. He further sets up that he was in the furniture business when the agreement was made, drawing a salary of $3,000 a year, and sometimes earning money other ways, so that he thought at the time he could afford to pay $75 a month out of his salary in order that his child might have a suitable and proper home; that shortly after the decree was rendered defendant made her home with her mother and began to work for the Grand Rapids Insurance Company, upon information and belief that she had been earning for a year $65 a month, which, with the $75 paid by petitioner, made her income about $140 a month; that in the spring of 1915 petitioner's employment ceased, that he went to the city of Detroit to engage in the real estate business, which was to him a new business,

and took about all the capital he had; and that since the 15th of May, 1915, his total earnings had been three commissions, the total of which was $450, out of which he had to pay office expenses and other expenses, and did not know how long it would be before he would earn or receive any more commissions, expecting, however, in the future to build up a business; that he has been paying $225 quarterly in advance since the agreement was signed out of capital and out of money he had borrowed; that he had no money in the bank, no real estate, no fixed salary, and no earnings upon which he could depend, and could not make the payment due October 1st next after the filing of the petition; that it became necessary for him to purchase an automobile to use in his business, which he was able to do only through the kindness of friends; and that the deferred payments upon that and his other indebtedness exceeded the sum of $1,800. Lastly, petitioner further sets up that during the winter of 1915 he was married to a lady of refinement and culture, has a pleasant home in the city of Detroit, is well able to make a home for his child during his vacations, and that in his home the child will receive the best of care, attention, and training.

This petition the defendant answered, setting up, among other things, that the household furniture referred to by petitioner in fact cost only $840, and that it was not turned over to her for any such specific purpose as that stated in the petition. She denies that she represented that she would not and did not expect to live with her mother, or that she wanted to make a home of her own, where she could devote her attention to the rearing and training of the said infant child. She admits that she began working for the Grand Rapids Insurance Company some time in the fall of 1914, from which she has been receiving a part of the time $55 a month, and later $60 per month. She

says that, relying upon the agreement and the decree, she rented a house where she lives, paying $25 per month rent, and that, after paying the rent and other necessary expenses for clothing for herself and her child, she found she was unable to support herself and the child on the $75 a month received from the petitioner and was compelled to work. To do this, she employed her mother at a salary of $6 a week to give all her time and attention to the child when the defendant was engaged and employed as aforesaid. She sets up her expenses as follows: Rent, $25; housekeeper, $25; gas, $2; ice, $2.75; electricity, $2; milk, $4; street car fare, $5; noon lunches down town, $6; groceries, meats, and provisions, $40; water tax, $1; an average of between $7 and $8 for coal; fire insurance, $1—a total of about $122, exclusive of clothing for herself and child and other such incidentals as are not above mentioned. She says that she carries a 20-year endowment policy upon the life of her child, upon which she pays a premium of $44 yearly, and that out of what she earns and receives from complainant she is merely able to support herself and child. She denies that the petitioner was refused the privilege of visiting the child, says she never refused him the privilege of taking the child for an automobile ride at any time, but learned that upon one occasion, when he applied at the house to take the child for a ride, her mother referred him to her, telling him to call her to the phone, which he declined to do. She alleges that he voluntarily resigned his position with his furniture employer, and denies knowledge of his present earnings and present capital. She sets up various matters with respect to his former earnings and holdings of property, want of knowledge of his present income, and says that, if he has incurred any obligations since the decree was granted, they have been voluntarily incurred, and if his circumstances have changed in any

particular since the making of their agreement and the entering of the decree it has been voluntary on his part. Defendant admits, upon information and belief, the alleged second marriage of petitioner, asserting in that connection that complainant was carrying on a flirtation and correspondence with her, and was meeting her from time to time, before the said divorce was granted, says that the complainant never had cause for divorce, and knew that if she contested the granting of one he never could have procured one.

There was a hearing, at which considerable testimony was taken, and the court, February 11, 1916, found that petitioner was temporarily unable to pay all of the alimony specified in the decree, that the provisions requiring the payment of $50 per month alimony be suspended as to $25 per month from October 1, 1915, to June 1, 1916, said suspended payments to be made as soon as petitioner's financial condition enabled him to do so, and that after June 1, 1916, the contract made by the parties and the decree based thereon be and continue in effect as if said temporary postponement of payments had not been granted. It was further ordered that petitioner pay forthwith to defendant $200 alimony and for the support of said minor child, "being the sums so due according to said decree for the months of October, November, and December, 1915, and January, 1916, over and above the sums the payment of which is suspended as above provided."

The complainant, appealing, presents two points: *First*, whether the court has authority to modify a decree consented to by the parties and based upon their agreement; *second*, whether there has been such a change of complainant's circumstances since the decree was granted as warrants a modification, in this way stating appellee's contentions. The agreement of the parties as to alimony is not in the printed record.

By stipulation it is printed in the brief for appellee. The making of the stipulation. is admitted by appellant, with the statement, however, that it has no proper place in the record, because supplanted and merged in the decree. The agreement contains the following:

"It is further stipulated and agreed that, if a decree of divorce shall be granted between the above named parties, then the foregoing and several provisions of this agreement, if approved and ratified by the court, shall be entered in the decree of divorce in said cause; but it is distinctly understood that by reason of said decree approving said contract said decree shall not in any way abridge the terms hereof, nor shall any right or rights under said decree be given to said Flora T. Kelly by petition or otherwise changing the amount of permanent alimony for herself as hereby agreed upon, nor shall any right or rights under said decree be given to said Frank R. Kelly by petition or otherwise changing the amount of permanent alimony which he is to pay to said Flora T. Kelly as permanent alimony for her support, and in event the decree of divorce is granted between said parties, the said decree shall provide that said allowance and alimony to Flora T. Kelly for her own support shall in no way be changed by either party."

OSTRANDER, J. (*after stating the facts*). 1. The statute (3 Comp. Laws, § 8641, 3 Comp. Laws 1915, § 11417) provides that after a decree for alimony or other allowance for the wife and child, or either of them, the court may from time to time on the petition of either of the parties revise and alter such decree respecting the amount of such alimony or allowance and the payment thereof, and may make any decree respecting any of the said matters which such court might have made in the original suit. The modification of the decree which is asked for would affect only the provision made for the support of the infant. Jurisdiction of the court to revise it is affirmed in *Camp* v. *Camp*, 158 Mich. 221 (122 N. W. 521), and in *Aldrich* v. *Aldrich*, 166 Mich. 248 (131 N. W. 542),

in each of which cases an agreement of the parties with respect to alimony was approved by the court and embraced in the decree.

2. The testimony does not convince me that the award of alimony originally made is excessive in amount, or that the defendant has violated or has intended to violate any provision of the decree, or of the agreement which was approved by the decree. The question then is: Have new facts arisen since the decree was made justifying its modification? Defendant's requirements have not diminished. She works, and it is fairly inferable that she intended, when she made the agreement with her husband, and when the decree was made, to work as her needs required. The facts which are presented as new and as having arisen since the decree was made are in the condition of the complainant husband, the petitioner here. He remarried, a voluntary act, but not one which he is permitted to say itself warrants a modification of the decree in his favor. *Smith* v. *Smith,* 139 Mich. 133 (102 N. W. 631).

The financial condition of petitioner has changed materially since the decree was made; the result, it appears, of resigning a position in which he earned a considerable salary and embarking in a new business. He expects, he says, that his income will increase in time. That a man is under obligation to pay alimony is a fact which does not, necessarily, preclude him from changing his employment or engaging in new business adventures; but the obligation is one to be considered, along with others, before making such a change. Wisely, I think, the court gave petitioner, in view of his present financial condition, some immediate relief without amending the decree, and the order made is affirmed, with costs to appellee.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.