203 So.2d 118

**James B. THOMAS**

v.

**Lucile P. THOMAS.**

**3 Div. 259.**

Supreme Court of Alabama.

Oct. 12, 1967.

Brooks, Garrett & Thompson, Brewton, for appellant.

Chason, Stone & Chason, Bay Minctte, for appellee.

HARWOOD, Justice.

This is an appeal involving two decrees modifying alimony and support payments made pursuant to a separate maintenance decree.

The complainant in the separate maintenance suit was Lucile P. Thomas, the wife of Dr. James B. Thomas.

This couple had been married for some 25 years at the time of the divorce proceedings. They had four children, two of whom have graduated from college and are married. The other two children are minors.

The evidence shows that Dr. Thomas had for some years prior to the institution of the divorce proceedings enjoyed a lucrative medical practice in Atmore, his gross income for several years prior to the divorce proceedings having been around $60,000 per year. Undoubtedly his net income must have been substantial. The Thomases, however, apparently gave little heed to economic realities and despite a substantial income their living expenditures far exceeded Dr. Thomas' earnings. At the time of the divorce, Dr. Thomas was in debt to the extent of $70,000 or better. His home was mortgaged, his securities (the amount not shown) were pledged as security for notes, and he had disposed of his insurance policies for their cash surrender value in order to meet his pressing income tax payments.

The lower court entered a decree granting Mrs. Thomas' petition for separate maintenance on the grounds of cruelty, and awarded her the custody of the two minor children.

Apparently in a settlement agreement between the parties, the court gave Dr. Thomas the right to elect which of two optional plans for alimony and support payments he would select, said selection to be filed with the court within 60 days.

Within 60 days Dr. Thomas filed with the Register his election to come under option number one.

Under the provisions of option number one it was provided that the respondent should pay to the complainant in monthly sums an amount equal to 20 percent of his gross income from all sources. As each minor child graduated from college or married or permanently ceased to attend school, the payments were to be reduced by 5 percent. Further, the respondent was to take steps to insure that the mortgage indebtedness on the home of the parties, occupied by Mrs. Thomas and the two minor children, should not be foreclosed, and if the respondent permitted such foreclosure, he should pay in addition to the amounts specified, the sum of $100.00 per month to secure adequate housing for the complainant and the two minor children.

The above decree was entered on 22 November 1965. On 11 January 1966, Mrs. Thomas filed a petition for clarification of the decree of 22 November 1965, there being some ambiguity as to whether the pay-

ments under option number one were to cover the month of December 1965.

Pursuant to this petition, further evidence was taken in this matter, over the objection of the respondent, and upon completion of this hearing the court entered a decree in which it first found that the respondent was not in contempt of court for non-compliance with the decree. However, the court refused to dismiss the petition on the grounds that it contained a prayer for general relief.

The court then found the decree of 22 November 1965 to be "totally inadequate" and expressed strong criticism of the respondent for doing nothing more for his family "above the very minimum technical requirements of said decree * * * except those things required of him by the decree." We are not sure of the basis of these views expressed by the court in that the respondent had apparently complied with the terms of the decree, whether minimal or not. This was all he was required to do.

The court then ordered, adjudged, and decreed that the portion of the decree of 22 November 1965, authorizing the respondent to elect which of two options he would select as to support and alimony, be cancelled, and in lieu thereof the court ordered the respondent to pay to the complainant $1,250 per month as support and maintenance of herself and the two minor children and to pay to the solicitors of the complainant as a fee, the sum of $1,250 payable at $250.00 per month beginning 1 May 1966. Costs were to be taxed against the respondent.

On 7 June 1966, the complainant again instituted contempt proceedings against the respondent on the basis that he failed to comply with the decree of 23 March 1966.

In this latter proceeding the respondent filed an answer, and also a cross petition in which he sought modification of the decree of 23 March 1966, alleging a change of circumstances.

Demurrers filed by the respective parties to the petition and to the cross petition were overruled and the cause came on for hearing after answers were filed by each of the parties.

After this hearing, the court on 29 June 1966, entered a decree again finding that the respondent was not in contempt of court.

The court ordered:

"* * * that after respondent shall pay to the complainant's attorney the sum of Seven Hundred Fifty ($750.00) Dollars, and shall on the 1st day of July, 1966 pay to the complainant the sum of One Thousand Two Hundred Fifty ($1,-250.00) Dollars, that after meeting said condition precedent of the paying of said two sums of money, the respondent shall be permitted, commencing on the 1st day of August 1966 and continuing thereafter during his period of residency training in Herman Hospital in Houston, Texas to pay to the complainant for the support and maintenance of herself and the minor children of the parties the sum of Three Hundred ($300.00) Dollars per month for a period of to thirty-six (36) months or for the period of the respondent's training and residency in medicine at Herman Hospital, whichever shall terminate first. It is further Considered, Ordered, Adjudged and Decreed by the Court that upon the termination of said respondent's training as hereinabove described, or at the expiration of said thirty-six (36) months the respondent shall again commence paying to the complainant for the use and benefit of herself and the minor children, or to repay her monies which she may have earned or inherited and spent on said minor children, the sum of One Thousand Two Hundred Fifty ($1,250.00) Dollars per month pending further orders of this Court. It is further Considered, Ordered, Adjudged and Decreed by the Court that commencing on the 1st day of August, 1966, if said respondent is in training as a resident

physician in medicine at Herman Hospital in Houston, Texas the respondent may defer any portion of the One Thousand Two Hundred Fifty ($1,250.00) Dollars per month, ordered paid by him to the complainant by the decree of the Court dated March 23, 1966, which is in excess of the Three Hundred ($300.00) Dollars hereinabove provided for during the period of such training, (but not to exceed thirty-six months) plus five months. Said deferred payments are to be due and payable in monthly installments to correspond with the original due date, before deferment, plus the period of training plus five months, it being the express intention of the Court that said deferred payments shall not become due as a lump sum, but shall be payable in monthly installments after the deferred time and to be in addition to any other monthly payments which the respondent may be required by law to make to the complainant at that time."

From the decrees of March 23rd 1966, and June 29, 1966, the respondent gave notice of appeal.

The complainant below has also filed cross assignments of error relating to the action of the court in rendering the decree of June 29, 1966, which modified the decree of 23 March 1966.

The evidence presented on the original hearing, and the subsequent hearings on the various motions, tends to show that preceding the divorce Dr. Thomas was in poor physical health and emotionally at low ebb. He testified he was answering calls and attending to his medical practice 24 hours a day, but despite these efforts he seemed to be going further into debt. Three days prior to the filing of the original bill, Dr. Thomas closed his office but retained his position as physician at Atmore State Prison, for which his salary was $700.00 per month. He testified that he had gotten into such an emotional state that he did not feel it was fair to his private patients to continue his general practice. He closed his office in October but some three months later reopened his office and again engaged in the practice of medicine. During the next six months, Dr. Thomas had built his gross income up to about $25,000 during such period.

For some time prior to the divorce proceedings, Dr. Thomas had been an applicant for a residency in the Herman Hospital in Houston, Texas, for the purpose of entering upon a course of study in nuclear medicine. Dr. Thomas testified that there were some 700 applicants for this residency and that only a very few were to be accepted. Such training would increase his diagnostic abilities many fold, and eventually result in greatly increasing his income. After the original decree and during the subsequent proceedings, Dr. Thomas was notified of his appointment to this residency and training program and accepted same.

The position carried with it a salary of $400.00 per month, and he was to be furnished a room in the hospital for living quarters. His meals were to be paid for personally.

Counsel for appellant, under appropriate assignments of error, argue two points.

First, that the original decree of 22 November 1965, could not be changed or modified in the absence of showing of changed conditions which would establish an equitable right to modification. See Adair v. Adair, 258 Ala. 293, 62 So.2d 437; Young v. Young, 262 Ala. 254, 78 So.2d 265. Counsel contends that the only changed conditions shown on the first modification established that Dr. Thomas' financial condition had considerably worsened and in view of this fact the court had abused its discretion in modifying the original decree.

We see no need to seriously consider this point in that the modification decreed on 23 March 1966, was itself modified and changed in the decree of 29 June 1966, which provided for the payment of $300.00 per month as support and maintenance, with

the excess between the amount of $300.00 and $1,250 being deferred until five months after Dr. Thomas would complete his residency.

Under the second point, counsel argues that since the original modification was erroneous, then the second modification of 29 June 1966, was necessarily erroneous and therefore the original decree of 22 November 1965, providing for alimony of 20 percent of Dr. Thomas' gross income, is the only decree binding upon the parties.

■■ An agreement of the parties fixing alimony becomes merged into the decree in which it is incorporated, and thereby loses its contractual nature to the extent that a court has the power to modify the decree when changed conditions so justify. Colton v. Colton, 252 Ala. 442, 41 So.2d 398; Whitt v. Whitt, 276 Ala. 685, 166 So.2d 413. Further, it is well settled that the court has power to modify future alimony payments running into the indefinite future whether such power be expressly reserved or not. Garlington v. Garlington, 246 Ala. 665, 22 So.2d 89.

Even if it be conceded that the first modification made by the decree of 23 March 1966, be erroneous because of a lack of showing of any changed conditions justifying such modification, it is clear that the question of the second modification was presented to the court by both parties under the proceedings leading to the last modification of 29 June 1966. Changed conditions were shown upon this hearing in that Dr. Thomas' sole income from the time he assumed his residency in the Herman Hospital was $400.00 per month. He had no other assets, and indeed was insolvent in that he owed $70,000 or better.

■ As stated by Chief Justice Stone in Murray v. Murray, 84 Ala. 363, 4 So. 239:

"Maintenance, not beyond the husband's means, is all the law can enforce."

Even if, as counsel for appellant contends, the decree of 23 March 1966, was erroneous, it clearly was not void, and was in full existence on the date of the second modifying decree on 29 June 1966. While in a hypertechnical sense the second modifying decree of 29 June 1966, may have been an amendment of the decree of 23 March 1966, in truth and in fact all of these modifying decrees related to the original divorce decree of 22 November 1965, and we think must be so treated.

■ We therefore hold that the decree of 29 June 1966, was an effective modification of the original decree, and that the contentions asserted by counsel in this regard are not meritorious.

Under the second point, counsel for appellant further contends that the second modification is palpably wrong and an abuse of judicial discretion in light of the appellant's financial condition.

■ We agree that it is unrealistic to expect Dr. Thomas to pay alimony and support of $1,250 per month when his income during his residency will be only $400.00 per month and he apparently has no capital assets. Cognizant of this, the court did reduce the alimony to $300.00 per month, deferring the excess above this amount until five months after completion of his residency. While we think that under the decree as drawn these excess payments are treated by the court as alimony to be paid in the future, it may be arguable otherwise, and in order to clarify this point, we hereby hold that such excess payments are to be considered as future alimony payments not to become due until five months after Dr. Thomas has completed his residency, when, if he so desires, he may have the question of the excess amounts again considered by the court.

Under the cross assignments of error, counsel for appellee argue that the last modifying decree of 29 June 1966, is erroneous in that the husband and father is not entitled to a reduction in support payments required under a separate maintenance decree where he voluntarily brings about a reduction in his monthly income

and has no capital assets from which to meet his obligation under the decree, or where he willfully abandons his earning capacity in order to defeat such obligation.

■ A professional man with large potential earnings but who has spent his earnings in extravagant living is in no position to contend that his wife and children are not entitled to support and maintenance because he had not accumulated an estate nor can he shield himself from such obligation by a willful abandonment of his earning capacity in order to defeat such obligation. Epps v. Epps, 218 Ala. 667, 120 So. 150.

■ However, the rule to be determined from the few cases that have considered the point is that a man under an obligation for maintenance or support payments is not necessarily precluded from changing his employment, but his obligations for support payments are factors to be considered along with other factors. Kelly v. Kelly, 194 Mich. 94, 160 N.W. 397.

■ The test is whether the former husband and father in good faith enters into a new occupation at a reduced income. If such be the circumstances, he should be permitted to make such change of occupation even though it might require his former wife and his children to share in hardship attending the change. If the family had remained together the husband would have had the right to make such choice.

There are many reasons that might influence a man to change his occupation other than the financial aspects. The prospect of improving his professional competence is a strong one. The prospect of leading a more satisfying life is not to be ignored. See Nelson v. Nelson, 225 Or. 257, 357 P.2d 536, 89 A.L.R.2d 1; Fort v. Fort (Fla.), 90 So.2d 313.

Here Dr. Thomas' reduction in income was brought about by his entering into a post graduate study in nuclear medicine. Such training would increase his ability as a diagnostician. Ultimately it should increase his earning capacity. Implicit in the court's action in deferring the alimony and support payments in excess of $300.00 per month during the period of his training, is the finding that Dr. Thomas acted in good faith in seeking to improve his professional competency. There is sufficient evidence to justify this conclusion.

Even so, Dr. Thomas knew of his obligations under the decree as to the support of his former wife and children. Judging by the past, he was capable of earning sufficient income to meet these obligations without too great an inconvenience to himself. With knowledge of his obligations in the premises, he elected to enter into the residency training, thereby making it impossible to meet the obligations of the court's decree. His course of action was of his own volition. This being so, we feel no inclination to disturb the order of the lower court in its decree of 29 June 1966, except for the clarification made above by us, assuming such clarification to be needed. The cross assignment of error invoked by the appellee is therefore without merit.

Mrs. Thomas, the appellee, has filed a motion in this court that she be allowed a reasonable fee for her solicitors of record for representing her on this appeal.

■ Counsel for appellee have been diligent and resourceful in representing Mrs. Thomas on this appeal and appellee's brief indicates considerable effort and research on counsels' part. We think it appropriate that an additional allowance of $150.00 be awarded the appellee for payment to her counsel for representing her on this appeal. See Gambrell v. Gambrell, 268 Ala. 671, 110 So.2d 248, and numerous authorities cited therein.

The decree appealed from is affirmed, with an allowance of an additional solicitors' fee of $150.00 for appellee's counsel for services on this appeal.

**404**

Affirmed, and allowance made for additional solicitors' fee.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.