HELEN R. CHAMBERLIN, APPELLANT AND CROSS-APPELLEE,
v. C. MEADE CHAMBERLIN, APPELLEE AND
CROSS-APPELLANT.

295 N. W. 2d 391

Filed July 29, 1980.  No. 42834.

Steven J. Lustgarten of Lustgarten & Roberts, for appellant.

Ray R. Simon of White, Lipp, Simon and Powers, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Helen R. Chamberlin (Helen) appeals from an or-

der entered by the District Court for Douglas County, Nebraska, on May 22, 1979, modifying and terminating the provisions for alimony contained in the decree of absolute divorce granted to her in 1967. C. Meade Chamberlin (C. Meade) also cross-appeals from that same order. In the original divorce action, Helen was the petitioner and C. Meade was the respondent. For purposes of clarity, we will in this opinion refer to the parties by their respective names, or will refer to C. Meade, who filed the application to modify the decree in the original divorce proceeding, as "Applicant," or "Cross-Appellant"; and we will refer to Helen herein as "Respondent" or "Appellant." We reverse the order of modification entered by the trial court on May 22, 1979, and reinstate the provisions of the original decree with reference to the payment of alimony.

The divorce decree was entered by the District Court on February 10, 1967. It granted Helen a decree of absolute divorce from C. Meade, awarded her the custody, care, and control of the minor children of the parties, and approved and incorporated into the decree an agreement captioned "Property Settlement, Alimony and Child Support Agreement" which was entered into between the parties.

Paragraph 1 of that agreement provided as follows:

> 1. Defendant [C. Meade] shall pay to plaintiff [Helen] alimony in the amount of Six Hundred Dollars ($600.00) per month, in advance, beginning on the date of entry of decree and on the same date of each month thereafter; said alimony payments shall terminate on the death or remarriage of plaintiff or the death of defendant.

As previously stated, the court found this provision to be fair and reasonable, and incorporated it verbatim into the decree of divorce.

The facts are uncontroverted that C. Meade made

all of the alimony payments required under the above provision of the decree from the date of the entry of the decree on February 10, 1967, until the date of the hearing on his application to modify the alimony provisions of the decree, which he filed on August 4, 1977. In his application, he asked that his obligation for alimony payments as contained in the decree of February 10, 1967, be terminated because of a substantial change in circumstances occurring since the date of the entry of the decree, and alleged such changed circumstances to be that the minor children of the parties had obtained their majority, thereby allowing Helen to engage in employment without adverse effect upon the rearing of said children; that Helen had, in fact, engaged in gainful employment and had exhibited a substantial earning capacity; and that C. Meade had remarried, and that his present wife and two minor children born as the issue of his second marriage were dependent upon him for their support and maintenance.

In her "Responsive Pleading to Respondent's Application to Modify Decree," Helen denied that a significant and substantial change had occurred and that she had substantial earning capacity, and affirmatively alleged that no change in circumstances had occurred to warrant a modification of the decree. In her "Cross-Application," she prayed that the alimony payments be increased to $1,000 per month, but did not specifically allege what change in circumstances she relied on for the requested modification.

C. Meade testified at the hearing on the application to modify that he believed the following circumstances merited modifying the decree: (1) That the two minor children had reached their majority and were employed; (2) That Helen had demonstrated a capability of earning a living; and (3) That he was concerned about being able to send the issue of his second marriage to college. In support of these

claims, evidence was introduced with regard to the financial status of the parties.

C. Meade, who was 59 years of age at the time of the hearing, is a vice president of Mutual of Omaha. He had a monthly gross income of $5,489.90 as determined from the tax return for the tax year preceding the hearing. His monthly living expenses, including deductions from his wages and alimony payments, amounted to $3,927.42. During the period of time from the entry of the decree until the action for modification was instituted, C. Meade's income approximately doubled. Moreover, C. Meade has an amount in excess of $300,000 in a retirement account, managed by his employer. In addition, C. Meade is a retired lieutenant colonel in the National Guard and will be entitled to retirement benefits upon reaching age 60, although the amount of benefits was unknown at the time of the hearing.

Helen was 63 years of age. Since the fall of 1968, she had been employed, initially on a part-time basis, and subsequently on a full-time basis. At the time of the hearing, Helen was employed as an income maintenance technician for Douglas County Social Services. Her gross income per month, from her employment, investments, and alimony was $1,748.35 as determined from the tax returns for the tax year preceding the hearing. Helen's monthly living expenses amounted to $1,119. Because she did not qualify for a retirement plan through her employer, Helen established individual retirement accounts and a deferred compensation plan, under which she had accumulated the sum of $6,882. Helen testified that she desired to retire, and would have an income from social security and investments upon retirement of approximately $416 per month, exclusive of any alimony payments.

In its Order of Modification of Decree of February 10, 1967, entered on May 22, 1979, the trial court found that the provisions of the decree with regard

to alimony were properly subject to modification and determination by the court and that the evidence revealed circumstances representing a substantial change from the conditions existing on the date of the decree, among which were: (1) The attainment of majority by the children of the parties, permitting Respondent to seek and obtain gainful employment; (2) The competency and capability of the Respondent in her employment and her substantial earnings therefrom; (3) The significant accumulated assets of the Respondent and earnings of her investments; and (4) The remarriage of the Applicant and the minor children born the issue of such marriage. The court thereupon ordered and decreed that the Applicant should comply with the payment of alimony as provided in the decree through the monthly installment payment which would fall due on May 10, 1980, following which the Applicant's obligation for monthly alimony payments would cease and terminate.

Helen has appealed to this court from that order. Her principal contention on appeal is that the trial court erred in finding a change in conditions had occurred since the date of the original decree, and that the reasons given by the court for such modification do not constitute "good cause" as that term is used in Neb. Rev. Stat. § 42-365 (Reissue 1978), which section, as far as material herein, provides as follows: "Unless amounts have accrued prior to the date of service of process on a petition to modify, orders for alimony may be modified or revoked for good cause shown . . . ."

Prior to the adoption by the Legislature of Nebraska's new dissolution of marriage statutes in 1972, commonly referred to as the "No-Fault" act, the rule with regard to the modification of alimony awards in divorce matters because of changed circumstances occurring after the decree was rendered was not stated in terms of "good cause," but, rather,

stated that a material change in the condition of the parties since the rendition of the decree of divorce was a prerequisite to a modification of the decree. See, for example, *Bowman v. Bowman,* 163 Neb. 336, 79 N.W.2d 554 (1956). It is clear that the decree of divorce entered in the instant case was entered prior to the effective date of the new statutes. There is no question, however, that the provisions of the new statutes apply to the modification proceedings in this case. The Legislature specifically provided in the new statutes enacted in 1972 as follows: "This act shall apply to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this act." Neb. Laws 1972, L. B. 820, § 33(3), codified as Neb. Rev. Stat. § 42-379(3) (Reissue 1978). We have, however, recognized an exception to the above rule and have stated that the provisions of Neb. Rev. Stat. § 42-365 (Cum. Supp. 1972) did not apply to judgments awarding *alimony in gross* entered previous to July 6, 1972. *Karrer v. Karrer,* 190 Neb. 610, 211 N.W.2d 116 (1973). It is clear, however, that the alimony award contained in the divorce decree entered in the instant case in 1967 was not an award of alimony in gross, as by the terms of the decree, it was to continue indefinitely, subject to termination only by death or remarriage. See *Ball v. Ball,* 183 Neb. 216, 159 N.W.2d 297 (1968).

While this court has not heretofore specifically defined the term "good cause shown," as used in § 42-365, we note that "good cause" is defined in Black's Law Dictionary 623 (5th ed. 1979) as follows:

Substantial reason, one that affords a legal excuse. Legally sufficient ground or reason. Phrase "good cause" depends upon circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed. Wilson v. Morris, Mo., 369 S.W.2d 402, 407.

> "Good cause" is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which term is employed but also by context of action and procedures involved in type of case presented. Wray v. Folsom, D.C. Ark., 166 F. Supp. 390, 394, 395.

There would seem to be little doubt that, under the above definition, a material change in circumstances since the entry of a divorce decree containing provisions for alimony, would constitute "good cause" for a modification of such original provisions. We emphasize, however, that it is not merely a change in circumstances that warrants such a modification, but only a change of circumstances of a material and substantial nature.

We have held that, in actions for the modification of dissolution proceedings, it is the duty of this court to review de novo the determination of the District Court with regard to whether a change in circumstances has occurred which justified the modification of the original decree. See, *Howard v. Howard,* 196 Neb. 351, 242 N.W.2d 884 (1976); *Haug v. Haug,* 195 Neb. 377, 238 N.W.2d 455 (1976).

In this case, C. Meade contended, and the lower court found, that the reaching of the age of majority by the minor children was a significant change of circumstances justifying the modification of the alimony award. We are unable to agree that this fact, in and of itself, constituted a change in circumstances significant enough to warrant modification of the alimony award. In addition to the alimony award, a separate award of support was made with which award C. Meade complied. Had this award not been included, it is conceivable that a portion of the alimony award was intended to be used as child support. However, the awards were separate. The attainment of majority age of the minor children is not a factor which, in itself, would require a reduction

of an alimony award to be used by Helen as a means of support for herself alone.

He also contended that his inability to make ends meet was a factor which showed good cause for modifying the alimony award. Were this, in fact, the case, relief sought *may* have been appropriate. However, as was previously stated, the evidence reveals that C. Meade had a monthly income of $5,489.90 and monthly expenses of $3,927.42. We do not believe that C. Meade has shown evidence of his inability to "make ends meet." He had further contended that Helen has shown ability and initiative in her pursuit of employment. It is likewise true that, because of her good stewardship, she has accumulated a considerable amount of assets which will produce income after her impending retirement. However, we do not believe that she should be penalized for using such ability and initiative. The record reveals that, even with such initiative and ability, Helen's monthly income, including alimony payments, was $1,748.35 and her monthly expenses were $1,119. Moreover, it is undisputed that Helen has a frugal and conservative lifestyle, saving whatever and wherever she can. While a change in circumstances has occurred, we do not believe that the change was so substantial as to justify the termination of alimony. On the contrary, Helen contends that the alimony award should be increased due to the effects of high inflation rates on the award and its relative purchasing power, which we will address later. We do not mean to advocate that spouses should not attempt to become self-supporting; in fact, we encourage such practice. We state only that the evidence presented herein does not indicate a substantial change in Helen's ability to support herself financially which would justify modification of the alimony award; Helen should not be penalized because of her efforts to supplement the alimony award.

Finally, C. Meade contends that the obligations of

his remarriage and subsequent offspring create good cause for the modification of the alimony award. Again, we fail to find merit in this claim. The record is clear that his earnings have almost doubled since the entry of the decree of absolute divorce. C. Meade's monthly income is in excess of the expenses he and his current family incur monthly. That his income will undoubtedly continue to increase and that he fully intends to remain employed as long as possible in the future, are undisputed in the record. In light of that evidence, we cannot conclude that his remarriage and obligations thereunder justify modifying the decree.

On balance, we conclude that C. Meade has failed to demonstrate a material and substantial change in circumstances which would justify the modification of the alimony award. We likewise conclude from the evidence as presented and as set forth herein, that Helen has not brought forth sufficient evidence to support a finding that an increase is required in the alimony award. Our review of the evidence de novo convinces us that "good cause" was not shown in the case and the lower court was clearly wrong in modifying the alimony award.

In his cross-appeal, C. Meade also has contended that the lower court committed error in not terminating his liability for the payment of alimony effective upon the date of the order, rather than approximately 1 year subsequent thereto. In view of what we have previously stated, we reject his claim to that effect. He failed to adduce evidence to establish good cause for the modification of the decree and, in fact, we note that a considerable portion of the evidence presented dealt with the reasonableness of the *original* alimony award. While this issue may have been appropriate for our review on direct appeal, we cannot consider it in reviewing an application for the modification of the original decree.

We feel that we should comment on one further

issue. In her brief on appeal, Helen contends that the provisions of the original decree with reference to the payment of alimony were not subject to modification, because they were entered into pursuant to an agreement and stipulation of the parties under Neb. Rev. Stat. § 42-366 (Reissue 1978), which agreement was approved by the court and incorporated in its decree and that the judgment rendered with reference thereto was, in fact, a "consent" judgment. We do not agree. In *McArthur v. Thompson,* 140 Neb. 408, 299 N.W. 519 (1941), we held that a judgment by consent constitutes the agreement of the parties and is simply made a matter of record by the court at their request. Although purporting to be, it is not, strictly speaking, the act of a court, but rather the act of the parties to the suit. In that case, the court also held that when a decree or judgment is made by consent of the parties, the court does not inquire into the merits or equities of the case. The only questions to be determined by it are whether the parties are capable of binding themselves by consent, and whether they have actually done so. These two facts appearing, the court orders the judgment of decree to be entered. In that case, the court also held that a consent judgment is treated as an agreement of the parties and is given greater force than an ordinary judgment and the court is ordinarily without power to open or modify the same over the objection of one of the parties thereto. It is clear that the order for the payment of alimony in this case was not a "consent judgment," notwithstanding the fact that, under the provisions of the applicable statute, cited above, the parties had agreed to the payment of alimony in the amount thereof. It was also required that the court approve the provisions of the agreement, which it did. Moreover, the court is also required to examine into the merits of the matter before it, including the question of whether the marriage was irretrievably broken.

That being so, it cannot be contended that the judgment entered was only an agreement of the parties. The resulting decree was a judgment of the court itself, entered after judicial inquiry into the merits thereof. A judgment entered under such circumstances is clearly not a "consent judgment."

Helen was not awarded attorney's fees by the trial court below and we do not disturb the discretion of the trial court in that regard. However, we believe she is entitled to an award of an attorney's fee in this court and we award her the sum of $750 for that purpose.

We reverse the order of the District Court and remand this matter with directions to reinstate the alimony provisions contained in the decree of divorce entered on February 10, 1967.

REVERSED AND REMANDED.

KRIVOSHA, C.J., concurs in result.