ROSALIE M. POPE, APPELLEE, V. PATRICK E. POPE, APPELLANT.

559 N.W.2d 192

Filed February 14, 1997.    No. S-95-125.

Steven J. Lefler, of Lefler & Franklin Law Offices, for appellant.

Richard M. Fellman, of Fellman, Moylan, Natvig, Steichen & Kelly, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and ROWLANDS, D.J.

WHITE, C.J.

Rosalie M. Pope petitioned this court for further review of the Nebraska Court of Appeals' decision terminating the alimony obligation of her former husband, Patrick E. Pope. Because we find that Patrick's decrease in income does not in this instance constitute good cause to justify modification or termination of his alimony payments, we reverse the decision of the Court of Appeals and remand the cause with directions to reinstate the district court's order in this matter.

Rosalie and Patrick were married on July 31, 1971, and the Douglas County District Court entered a decree of dissolution on November 6, 1989. At the time of the decree, Patrick was employed in a management position at Kellogg Company in Omaha and earned approximately $70,000 per year. Rosalie was (and still is) employed as a teacher at a private school in Omaha and earned approximately $14,000 per year. The parties had one minor child.

The district court, in relevant part, ordered Patrick to pay $515 per month in child support. The court also ordered Patrick to pay alimony in the amount of $600 per month commencing October 1, 1989, continuing for 36 months, and then in the amount of $300 per month for 73 months.

On July 13, 1990, Patrick was fired from his position at Kellogg for sleeping at his desk during his night shift. During the hearing on this matter, Patrick's attorney asked him, "And can you tell the Court why you got terminated, sir?" Patrick answered, "They caught me sleeping at my desk during a lunch hour." This is the only evidence concerning the matter.

Patrick attempted to find other comparable employment, but was unsuccessful because he lacks a high school diploma and had attained his management position only by working his way

up through the company. On July 25, 1990, Patrick filed an application for modification of decree, asking for a reduction in his child support and alimony obligations. The court entered a temporary order on November 26, 1990, reducing Patrick's child support payments to $258 per month and his alimony payments to $300 per month, and ordering that the original decree remain in effect in all other respects.

Patrick found a job as a car salesman in March 1991, earning a net pay of approximately $1,000 per month. Patrick left this position in 1993 and started his own car interior repair business. In 1994, Patrick grossed approximately $1,500 per month and testified that the business was showing "good growth this year."

On April 27, 1994, Patrick again filed an application to modify the decree, asking that the court terminate his alimony obligation. Child support was not an issue because the parties' minor child had reached the age of majority. In the court order dated January 5, 1995, the district court found that Patrick was in arrears in alimony payments in the amount of $9,200 plus interest; that Patrick was in willful contempt of the prior orders of the court and could purge himself from contempt and remain out of jail by paying $200 per month commencing January 1, 1995, and continuing every month thereafter until all alimony originally decreed by the court plus interest was paid; and that the court believed that the $200-per-month payment was reasonable because it was comparable to Patrick's former monthly child support payment.

Patrick timely appealed to the Court of Appeals. The Court of Appeals terminated Patrick's alimony payments, finding that a material and substantial change of circumstances with regard to Patrick's employment status had occurred, that this change was not anticipated or the result of the mere passage of time, that Patrick would never be able to regain his former level of income, and that the failure of the trial court to terminate Patrick's alimony payments constituted an abuse of discretion. See *Pope v. Pope*, 96 NCA No. 21, case No. A-95-125 (not designated for permanent publication). The Court of Appeals remanded the matter with instructions to enter an order terminating Patrick's alimony payments and future obligation effective April 27, 1994. See *id.*

Rosalie petitioned this court for further review, and we granted that petition. Rosalie assigns as error the Court of Appeals' action in overruling the trial judge's determination that there existed no good cause justifying termination of alimony.

We entrust the modification of an alimony award to the discretion of the trial court and review the trial court's decision de novo on the record for abuse of discretion. *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994); *Kleager v. Kleager*, 242 Neb. 24, 492 N.W.2d 873 (1992). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995); *Evenson v. Evenson*, 248 Neb. 719, 538 N.W.2d 746 (1995).

In her sole assignment of error, Rosalie alleges that the Court of Appeals erred in finding that Patrick's job loss constituted an unanticipated material and substantial change in circumstances. Rosalie argues that Patrick did not demonstrate good cause justifying the termination of alimony because he was fired from his former employment due to his own wrongdoing. We agree.

Orders for alimony may be modified or revoked for good cause shown. Neb. Rev. Stat. § 42-365 (Reissue 1995). Good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of the alimony order. *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992); *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985). The moving party has the burden of demonstrating a material and substantial

change of circumstances which would justify the modification of the alimony award. *Chamberlin v. Chamberlin*, 206 Neb. 808, 295 N.W.2d 391 (1980).

While we have held that one may in good faith make an occupational change even though that change may reduce one's ability to meet financial obligations, we have never determined whether the termination of one's employment due to one's own bad acts or fault constitutes good cause justifying modification or termination of alimony payments. See *Cooper, supra*. Other jurisdictions have addressed this issue. For instance, the New Hampshire Supreme Court has stated, "Although unemployment or diminution of earnings is a common ground for modification, a petition for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets." *Noddin v. Noddin*, 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983) (involving petition to modify alimony and child support where father brought about his own reduced financial condition when he lost job for stealing trade secrets). The Maine Supreme Judicial Court has stated, "[R]emarriage, change of jobs or increased indebtedness does not *necessarily* justify reduction of an alimony award, especially when the change of conditions were [sic] voluntarily brought about by the payor or do [sic] not affect his ability to meet his alimony obligation." *Williams v. Williams*, 444 A.2d 977, 981 (Me. 1982). See, *Kiefer v. Kiefer*, 671 So. 2d 710 (Ala. Civ. App. 1995) (holding that, even if change of circumstances is shown, trial court is not required to grant modification of periodic alimony award unless husband had in good faith entered into new occupation at reduced income); *Kinne v. Kinne*, 599 So. 2d 191 (Fla. App. 1992) (employing good faith test to determine whether decrease in income should justify decrease in alimony); *Antonelli v. Antonelli*, 242 Va. 152, 409 S.E.2d 117 (1991) (holding that reduction in income resulting from voluntary employment decision does not require corresponding reduction in payor spouse's support obligations, even if decision was reasonable and made in good faith); *Giesner v. Giesner*, 319 N.W.2d 718 (Minn. 1982) (holding good faith test should apply to determine whether decreased earnings should result in decreased support payments); *Thomas v. Thomas*, 281

Ala. 397, 203 So. 2d 118 (1967) (holding that husband's knowledge of his obligation of support and his subsequent election to enter employment that would substantially reduce his income and make it impossible to meet his obligations would not justify reduction in support).

We have held, in the context of the modification of child support obligations, that " 'a petition for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. . . .' " *Ohler v. Ohler*, 220 Neb. 272, 275, 369 N.W.2d 615, 617 (1985) (holding that father's criminal activity resulting in incarceration did not constitute material change in circumstances justifying reduction in or termination of his child support obligations). See *Baer v. Simon*, 334 So. 2d 796 (La. App. 1976) (affirming denial of request to modify support where father's unstable financial condition was created by his failure to appear at work, his drinking habits, and his failure to do work for which he was paid). We have also analogized the material change of circumstances required to justify modifications of child support to the good cause requirement necessary to modify alimony. See *Ohler, supra*.

We find persuasive Rosalie's argument that Patrick's own bad act resulted in his reduction in income and that his failure to stay awake on the job should not be worked to her detriment. We also find persuasive the reasoning of cases such as *Noddin* and *Baer*. We therefore extend the rule of *Ohler* to cases involving the modification or termination of alimony and find that a petition for the modification or termination of alimony will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. In the absence of evidence that Patrick fell asleep because of some justifiable reason, we hold that Patrick's bad act resulting in the loss of his employment does not constitute good cause justifying the termination of his alimony obligation.

We also find that the trial court's order requiring Patrick to pay $200 per month in alimony until he has paid the full amount awarded under the decree and retaining jurisdiction to address the contempt issue in the event that payments are not timely made was not an abuse of discretion. The trial court has inher-

ent power to retain jurisdiction to determine amounts due and to enforce judgments for alimony. *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994). As well, in reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable so as to deprive a party of a substantial right or just result. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

Here, the trial court lowered the amount of the monthly payment due from Patrick in order to accommodate his lower monthly income and extended the time required for Patrick to pay the total amount of alimony due. We find that the trial court's award was not untenable, nor did it deprive Patrick of a substantial right or just result.

Because we have determined that Patrick's termination due to his falling asleep on the job does not constitute good cause justifying termination or modification of alimony and that the trial court's order was not an abuse of discretion, we therefore reverse the decision of the Court of Appeals and remand the cause with directions to reinstate the order of the trial court.

REVERSED AND REMANDED WITH DIRECTIONS.

CONNOLLY, J., dissenting.

I respectfully dissent.

This court has held that a decrease in income for the payor spouse may constitute a change in circumstances calling for a reduction in alimony payments. See *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985). See, also, *Fogel v. Fogel*, 184 Neb. 425, 168 N.W.2d 275 (1969). The evidence before us shows that Patrick was earning approximately $70,000 per year at the time he was ordered to pay alimony to Rosalie. However, due to his termination by Kellogg and his lack of education, Patrick is now earning approximately $18,000 gross per year. In light of this $52,000 decrease in income per year, it becomes obvious that a material change in circumstances has occurred.

However, according to the majority, Patrick must overcome a second and much more elusive hurdle by providing a justifiable reason for falling asleep at work during his night shift. The only evidence concerning Patrick's termination by Kellogg is Patrick's testimony that he was fired because he was sleeping at

his desk during his lunch hour. There is nothing in the record that would lead one to conclude that he intentionally or through bad faith caused his termination. Absent such proof, the majority opinion concludes that "Patrick's *bad act* resulting in the loss of his employment does not constitute good cause justifying the termination of his alimony obligation." (Emphasis supplied.) Categorizing his falling asleep as a bad act seems harsh, since it is not an uncommon occurrence for night-shift workers.

As justification for reaching this result, the majority relies heavily on our decision in *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985), wherein we held that incarceration for a criminal conviction does not warrant the reduction of child support obligations. In so holding, we cited a New Hampshire Supreme Court case which stated that "a petition for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets." *Noddin v. Noddin*, 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983). While I agree with this statement, it has no application in this case. The act of falling asleep on a night shift is hardly comparable to a criminal conviction carrying a 15-year sentence. Unlike the father in *Ohler*, Patrick committed no crime or "bad act"; he simply fell asleep during his lunch hour. There exists no evidence that this incident interfered with his work in any way.

Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). The relative incomes of the parties are close, with Patrick earning $18,000 per year gross and Rosalie $14,000 per year gross. Rosalie, unlike Patrick, has a college degree and potentially a higher earning capacity. To insist that Patrick continue to pay alimony based on his old salary of $70,000 rises to the level of a penalty and serves no useful purpose. I would affirm the decision of the Court of Appeals and terminate Patrick's alimony obligation.

WRIGHT, J., joins in this dissent.