MURDOCK, Judge,
dissenting.
I am concerned that in some recent cases this court has made decisions, and has explained its decisions, in a manner that has suggested that whenever a noncustodial parent[1] is not working and earning to the fullest extent of their ability to do so the custodial parent is entitled to continue receiving child support as if that were not the case. Stated differently, my concern is that some of our decisions have had the effect of allowing a custodial parent and the parties’ children to be insulated from the noncustodial parent’s good-faith career choices, or, simply, poor job performance, in ways that they would not be insulated if the parents were still married. Accordingly, I am concerned that the trial court in the present case may have based its decision merely on whether the noncustodial parent was earning as much as he could. Correctly framed, however, the issue in cases such as these is whether the noncustodial parent has purposefully diminished his or her earnings in order to avoid his or her child-support obligation, or instead has simply made errors in judgment that have led to a diminution of his or her earnings (as many people do at some juncture in their careers and as I believe the noncustodial parent did in Van Houten v. Van Houten, 895 So.2d 982 (Ala.Civ.App.2004) (Murdock, J., dissenting)), or made a career choice in good faith, as may have been done in the present case. Rule 32(B)(5), Ala. R. Jud. Admin., was intended as a “shield” to protect children of the marriage from a noncustodial parent’s acting in bad faith. Care should be taken that it is not available as a “sword” for use by a custodial parent to exercise more control over his or her former spouse’s career than the law intended.
The opinion in Thomas v. Thomas, 281 Ala. 397, 203 So.2d 118 (1967), articulated well Alabama law as it existed at the time Rule 32(B)(5) was enacted, and provides insight into the meaning of the terms “voluntary unemployment” and “voluntary underemployment” in that rule. As the Supreme Court explained:
“A professional man with large potential earnings but who has spent his earnings in extravagant living is in no position to contend that his wife and children are not entitled to support and maintenance because he had not accumulated an estate nor can he shield himself from such obligation by a willful abandonment of his earning capacity in order to defeat such obligation. Epps v. Epps, 218 Ala. 667, 120 So. 150 [(1929)].
“However, the rule to be determined from the few cases that have considered the point is that a man under an obligation for maintenance or support payments is not necessarily precluded from *771 changing his employment, but his obligations for support payments are factors to be considered along with other factors. Kelly v. Kelly, 194 Mich. 94, 160 N.W. 397 [ (1916) ].

“The test is whether the former husband and father in good faith enters into a new occupation at a reduced income. If such be the circumstances, he should be permitted to make such change of occupation even though it might require his former wife and his children to share in hardship attending the change. If the family had remained together the husband would have had the right to make such choice.

“There are many reasons that might influence a man to change his occupation other than the financial aspects. The prospect of improving his professional competence is a strong one. The prospect of leading a more satisfying life is not to be ignored. See Nelson v. Nelson, 225 Or. 257, 357 P.2d 536, 89 A.L.R.2d 1 [ (1960) ]; Fort v. Fort (Fla.), 90 So.2d 313 [ (1956) ].”
Thomas, 281 Ala. at 403, 203 So.2d at 123 (emphasis added). See also Winfrey v. Winfrey, 602 So.2d 904 (Ala.Civ.App.1992) (affirming a trial court’s determination that a former husband was not voluntarily unemployed when he was terminated from his truck-driving position for refusing to take an assignment after having been on the road 13 out of the past 15 days).
In Dunn v. Dunn, 891 So.2d 891 (Ala.Civ.App.2004), this court held that, although a month before the divorce trial the wife had quit a job in which she was earning approximately $1,300 a month, the trial court was not required to find the wife voluntarily underemployed. The wife in Dunn had been trained as a teacher; the part-time positions that she had held in the past had been largely clerical in nature. The job she had at the time of the trial included working as a bookkeeper and sometimes as a chasier. The job she had quit just before the trial, which was at issue in the case, was one in which she was responsible for accounting and bookkeeping work for several stores. The wife testified that that job had become too much for her to handle, and, as a result, this court held that the trial court was free to consider whether the wife’s choice to forgo a larger paycheck was motivated in good faith by a belief that she was not adequately trained for the work and considered herself overwhelmed by it.
Although it involved an award of alimony only, Kiefer v. Kiefer, 671 So.2d 710 (Ala.Civ.App.1995), is also instructive. In that case, the former husband resigned from a position paying $223,000 per year and went to work with a company owned by his new wife earning only $3,000 per month. In affirming a judgment reducing the former husband’s alimony obligation, this court noted that the former husband testified that he desired a reduction from the long hours he had been working for more than 20 years and that he wanted to spend more time with his family. Compare Mitchell v. Kelley, 628 So.2d 807, 809 (Ala.Civ.App.1993) (affirming a finding of voluntary underemployment where the record included, among other things, testimony from a former coworker of the father indicating that the father “wanted to be fired so that ‘he wouldn’t have to pay any child support’ ” and where the father had been observed working while drawing unemployment benefits); and Lee v. Lee, 608 So.2d 1383 (Ala.Civ.App.1992) (affirming a trial court’s finding of underemployment where, although the father claimed that his recent employment had been terminated by the employer because of the father’s wrongdoing, there was evidence that the father had originally approached the employer about voluntarily leaving his *772 job as an insurance agent and that the father was well-qualified and capable of working as an insurance agent).
“Voluntary underemployment” has a specific meaning within the context of Rule 32(B)(5). In light of some recent decisions by this court, and based on my review of the record and the judgment entered by the trial court in the present case, I am not persuaded that the trial court applied this meaning. I therefore would reverse the judgment of the trial court and remand this cause for the trial court to apply the “good faith” standard discussed above in determining whether the former husband was voluntarily underemployed within the meaning of Rule 32(B)(5).

. I use the terms "noncustodial parent” and "custodial parent" in this opinion merely for ease of reference. A custodial parent may also be voluntarily unemployed or voluntarily underemployed for purposes of determining the noncustodial parent’s support obligation.