IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HEIMES V. ARENS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL HEIMES AND CEIL HEIMES, APPELLANTS,

V.

DENNIS A. ARENS AND MARY F. ARENS, APPELLEES.

Filed November 16, 2021.    No. A-20-790.

Appeal from the District Court for Cedar County: BRYAN C. MEISMER, Judge. Affirmed.

Daniel L. Hartnett, of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., for appellants.

Matthew D. Hammes, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellees.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Michael Heimes and Ceil Heimes (the Heimeses) appeal from an order of the district court for Cedar County. The court denied the Heimeses' application for order to show cause why Dennis A. Arens and Mary F. Arens (the Arenses) should not be held in contempt of a 2014 court order, and it also granted a motion to dismiss with prejudice filed by the Arenses. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

The parties to this appeal have been involved in litigation for more than a decade with respect to drainage issues affecting their neighboring real properties separated by a particular county road in Cedar County. The early procedural history of this case is set out in greater detail

- 1 -

in this court's memorandum opinions following a previous appeal. See *Heimes v. Cedar County*, No. A-15-646, 2016 WL 1358528 (Neb. App. Apr. 5, 2016) (selected for posting to court website), *modified on denial of rehearing* 2016 WL 3606210 (Neb. App. June 28, 2016) (selected for posting to court website). We have outlined the relevant procedural history here for purposes of the present appeal.

In 2011, the Heimeses filed an amended complaint in the district court against the Arenses, alleging that the Arenses had constructed an earthen dike on the edge of their property that prevented the natural flow of water from the Heimeses' property onto the Arenses' property and caused flooding and damage to the Heimeses' property. The Heimeses alleged claims of nuisance and trespass, and they requested an injunction and damages. Subsequently, the Heimeses filed a supplemental complaint in a companion case against Cedar County (involving alleged damage from work completed on the county road). The cases were consolidated in the district court and in the previous appeal.

The Arenses, Heimeses, and Cedar County mediated their disputes and entered into a mediation settlement agreement in September 2012. The district court entered an order in May 2013, approving the mediation settlement agreement and ordering the parties to comply with its terms and requirements. According to the mediation settlement agreement, Mark Mainelli, an engineer, was to conduct an assessment of the drainage affecting the involved properties and provide recommendations "to improve the existing drainage to enable the free flow of water across said properties to the extent that is reasonably feasible by the application of accepted engineering and hydrology standards and principles, taking into account the features of said properties, and also upstream and downstream properties." Mainelli was to complete his study to allow construction to begin in the fall of 2012, and the parties agreed to comply with and implement Mainelli's recommendations "within 9 months or as soon thereafter as may reasonably be completed." Prior to completing his assessment and preparing his report and recommendations, Mainelli was to obtain input from each of the parties and to "review and consider the reports of the other parties' experts." The mediation settlement agreement also provided that in the event of a disagreement or conflict regarding implementation of Mainelli's recommendations, the parties would obtain the services of a particular attorney "for purposes of resolving such conflict or dispute through mediation."

Mainelli sent recommendations for improving drainage on the properties to the parties by letter in February 2013, and he sent another letter with supplemental final recommendations in December (collectively "the Mainelli report"). In Mainelli's December letter to the parties, he stated that his recommendations were "conditioned upon the approval by the parties" and were "intended to provide for the most efficient flow of water consistent with the topography and engineering principles." He also stated, "The implementation of these recommendations is to replace the existing agreement between the parties and provide for the final settlement and resolution of the drainage dispute pending between the parties in the [district court]." The particular recommendation at issue in the present appeal is found in the December letter and states, "Additional County easement documentation should be filed with the County describing the cleanout elevation requirements downstream of the roadway culverts. This should be attached to the deed to document the drainage elevations required to be maintained by the downstream owner

in perpetuity." The cleanout elevation requirements were set forth in other sections of the Mainelli report.

The Heimeses and the Arenses made certain subsequent objections related to the mediation settlement agreement requirements. Following a hearing, the district court entered an order on August 21, 2014, overruling those objections and determining that the mediation settlement agreement was clear and unambiguous. The court ordered the parties to comply with the terms of the agreement and to construct improvements as recommended by Mainelli in the Mainelli report, which the court attached to the order and incorporated by reference. The court also ordered the parties to file written reports within 60 days setting out their specific plans for compliance with Mainelli's recommendations, stated that it would not "entertain additional arguments regarding contests between expert witnesses" or "reopen the agreement to further battle of the experts," and stated that the order was a final order in both of the consolidated cases as to the enforceability of the mediation settlement agreement. The court specified, "In the event that parties are unable to agree to the implementation of . . . Mainelli's recommendations, the [c]ourt will schedule the matter for a hearing and will make such orders as are appropriate under the then existing circumstances." Subsequently, the Arenses filed a motion to alter or amend, and the court entered an order in February 2015 denying that motion. The parties did not appeal either the August 2014 or the February 2015 order.

In 2015, both the Heimeses and Arenses filed separate notices of dispute in implementing Mainelli's plan and demands for further mediation, which alleged that Mainelli's design did not conform to the settlement mediation agreement. The district court entered an order in June 2015 overruling the notices of dispute, and the Heimeses appealed. This court dismissed the appeal for lack of jurisdiction. In our memorandum opinion, we determined that the 2015 order was not a final, appealable order, but was a continuation of the August 2014 order from which no appeal was taken. See *Heimes v. Cedar County*, No. A-15-646, 2016 WL 1358528 (Neb. App. Apr. 5, 2016) (selected for posting to court website), *modified on denial of rehearing* 2016 WL 3606210 (Neb. App. June 28, 2016) (selected for posting to court website).

Thereafter, in January 2017, the Heimeses filed a motion to compel performance, asking the district court to enter an order compelling the Arenses to comply with the August 2014 order and execute certain easements, which the Heimeses claimed were required by Mainelli's recommendations and would allow for completion of the plan. The record in the present appeal does not include a bill of exceptions from any hearing on the 2017 motion to compel, but the court's order ruling on that motion, entered in January 2017, indicated that it heard evidence and argument from the parties, who appeared through counsel. The court denied the motion to compel without further elaboration.

On July 20, 2020, the Heimeses filed the application for order to show cause at issue in the present appeal. The Heimeses alleged that the Arenses were refusing to execute easement documents required by Mainelli's report and that this refusal "clearly violates the terms of the 2014 Order." The Heimeses asked the court to enter an order directing the Arenses to show cause why they should not be held in contempt for violating the August 2014 "by failing to provide the necessary easement to the Heimeses." They asked the court to enter an order requiring the Arenses "to sign appropriate easement documents, prescribe a timeframe for [the] Arenses to execute the

documents, and enforce that Order through further contempt proceedings if the Arenses fail to comply with the Order."

The Arenses filed an objection to the Heimeses' show cause application, asserting that the issue raised in the application had been previously considered and ruled upon by the district court in its January 2017 order. They also asserted that there had been "detrimental reliance upon the [c]ourt's [o]rder and the actions of the parties" since entry of the January 2017 order which "prevent the relief requested" by the Heimeses. The Arenses asked the court to deny the show cause application and to enter an order of dismissal with prejudice.

The parties' motions were heard by the district court on August 20, 2020. In support of their motion to dismiss and in opposition to the contempt application, the Arenses offered 10 exhibits identified in an index of evidence filed with the court. At the court's suggestion, the Arenses' attorney agreed to the court taking judicial notice of these exhibits which were already "part of the file" so they would not have to be renumbered. These exhibits are found in a supplemental transcript filed with this court but were not marked, identified, and made a part of the bill of exceptions. The parties also offered a deposition of Mainelli, as well as the exhibits attached to that deposition, all of which were received by the court and have been included in the bill of exceptions. Many of the judicially noticed exhibits were also included as exhibits attached to Mainelli's deposition, and we have only considered the evidence that has been made a part of the bill of exceptions. A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020). Papers requested to be judicially noticed must be marked, identified, and made a part of the bill of exceptions. *Id.*

In the affidavit attached to his deposition (dated April 8, 2020), Mainelli stated his awareness that "each of the parties had constructed the improvements as outlined in [his] written recommendations and that the project ha[d] been completed" as provided in the mediation settlement agreement and as ordered by the court. He stated further:

I have monitored and reviewed the parties' compliance with the [c]ourt [o]rder and my recommendations and am satisfied that the project has been completed as required and that there is nothing further to be done by any party to implement my recommendations. It is my opinion that the drainage to the area has been improved as recommended and as ordered by the [c]ourt, and that there is nothing further that should be done to make any further improvements to facilitate drainage by any party.

In his deposition, taken on August 13, 2020, Mainelli was asked about certain easement documents prepared by his office. Mainelli stated that at the time of his December 2013 letter, "there was no court action. So, [his] concern was, and still would be, that there's a vehicle that prevents any of these parties . . . from having to go through this court case again to establish what is the baseline [clean-out elevation]." He stated further that the easement was "an attempt to have something that could be attached by the county assessor to the deed downstream that would give somebody a place to find that there was a requirement [for the baseline clean-out elevation]" and that the easement recommendation was "[his] attempt . . . to have a document that would be available for future landowners to know what we'd settled on." Mainelli also discussed a chain of email communications between himself and the parties' attorneys attached as an exhibit to his

deposition. The email communications reported a conversation one of the attorneys had with Mainelli, wherein Mainelli stated he did not feel that a permanent easement would be necessary, recognized the Arenses' reluctance to grant such a property interest to the Heimeses, and expressed that the court's order requiring the parties to comply with the plan was sufficient to insure ongoing compliance. In his own reply to the email communications, Mainelli "concur[red] with the email string" and indicated that the "important aspect" of his recommendation had been:

> [T]hat the area downstream of the roadway culverts is cleaned out through the Arens[es]' property to the elevation show[n] in the report . . . and as shown on the design plans previously submitted. The intent of any easement would solely be to document the need to maintain this elevation. This will most likely be satisfied by the court documentation.

In Mainelli's deposition, he agreed with the assessment set forth in the email communications, and he stated that he had been trying to document the correct elevation and prevent future litigation. Mainelli confirmed that all of his recommendations were conditioned upon approval of the parties and that the recommended drainage improvements had been completed per his recommendations.

On October 9, 2020, the district court entered an order dismissing the Heimeses' application for order to show cause and granting the Arenses' motion to dismiss with prejudice. First, the court noted that the Heimeses' application effectively sought to enforce the recommendation that the Heimeses be granted an easement upon the Arenses' real property found in the Mainelli report attached to the court's August 2014 order. The court observed that the same issue had been before the court previously in 2017 when the Heimeses filed their motion to compel, which the court had denied after hearing evidence and argument by the parties. The court stated that it found nothing in the current application or new evidence offered "that would convince the Court to alter its previous ruling on this issue." Accordingly, the court denied the Heimeses' application for order to show cause. Next, the court addressed the Arenses' motion to dismiss. The court noted the Arenses' argument that everything required by the August 2014 order had been completed, while the Heimeses argued that the 2014 order still required the execution of "the appropriate easements upon the Arens[es]' real estate." The court again noted its 2017 order ruling on the Heimeses' motion to compel which sought to enforce that portion of the Mainelli report. The court again stated that it could not find anything in the record to make it "inclined to amend the position taken" in its January 2017 order. Based on its prior order "with regard to the issue of the execution of an easement," the court found that "there are no remaining issues for the [Arenses] to address with regard to the August 21, 2014, Order," and accordingly, granted the motion to dismiss with prejudice.

## ASSIGNMENTS OF ERROR

The Heimeses assert that the district court erred by (1) relying on the court's January 2017 order as a basis for denying their application for order to show cause and (2) failing to consider the merits of their application which sought to enforce the court's August 2014 order.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion

independent of the lower court's decision. *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

ANALYSIS

*Effect of January 2017 Order.*

In the Heimeses' first assigned error, they challenge the district court's reliance on the prior January 2017 order to preclude them from seeking relief in their 2020 show cause application. Specifically, the Heimeses assert that the January 2017 order impermissibly modified the August 2014 final order and was therefore a nullity. A void order may be attacked at any time in any proceeding. *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016).

Before addressing the Heimeses' argument that the 2017 order was void, we initially disagree with their assertion that the district court's "sole reason" for denying their show cause application was its reliance on the January 2017 order. Brief for appellants at 15. A review of the court's October 2020 order shows that the court's decision to deny the Heimeses' application was also based on its review of the current pleadings and the evidence offered at the hearing in 2020.

The Heimeses argue that the January 2017 order "inappropriately attempted to alter or amend" the August 2014 order. Brief for appellants at 16. In the mediation settlement agreement, the parties agreed to comply with and implement Mainelli's recommendations. In August 2014, the court ordered the parties to comply with the terms of that agreement and to construct improvements as recommended by Mainelli. Here, the Heimeses argue that despite the "clear, unambiguous statements" in Mainelli's recommendations calling for "the preparation and recording of the easement documentation," which the parties had been ordered to follow in the August 2014 order, the court denied the prior motion to compel and "effectively altered or amended" the 2014 order "because it [the January 2017 order denying the motion to compel] removed the requirement of the easement documentation. Brief for appellants at 18. They argue that in 2017, the court had no authority to make this alteration to the 2014 order, which had already become final, making the 2017 order "void and of no effect." Brief for appellants at 22.

In support of these arguments, the Heimeses first cite *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986), a case in which a party sought an interpretation of a final divorce decree and the trial court expanded the decree by awarding certain items to the other party. On appeal, the Nebraska Supreme Court reversed, determining that the trial court was without authority to enter what was essentially a modified supplemental decree after the original decree had already become final. The Supreme Court stated that neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. *Id.* What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant. *Id.*

The Heimeses also cite to *In re Guardianship & Conservatorship of Bowman*, 12 Neb. App. 891, 686 N.W.2d 642 (2004). In that case, this court found that the trial court lacked subject matter jurisdiction to entertain a party's motions seeking clarification of a prior order after the time for appeal had passed. We disagreed with the trial court's position that it could reopen its files at any time to clarify previously issued orders, and we observed that there is no procedure authorizing a court to "interpret" or "clarify" its prior final orders. *Id.*

Finally, the Heimeses cite *Pearson v. Archer-Daniels-Midland Milling Co.*, 282 Neb. 400, 803 N.W.2d 489 (2011), in which the Nebraska Supreme Court rejected an interpretation of a prior order by a Workers' Compensation Court judge, stating that the meaning of a decree as a matter of law is determined only from the four corners of the decree.

We do not find the above case law applicable in this appeal. The January 2017 order did not attempt to interpret or clarify the August 2014 order. Rather, it simply denied Heimeses' attempt to compel the Arenses to execute easements. Here, the Heimeses argue that the January 2017 order was inconsistent with and altered or amended the final August 2014 order because it did not require the Arenses to comply with all of Mainelli's recommendations, specifically the recommendations with respect to easements. The underlying implication of the Heimeses' argument that the 2017 order impermissibly modified the final 2014 order, is that this modification made the 2017 order void. We disagree.

The January 2017 order did not change the requirement of the 2014 order that the parties comply with the mediation settlement agreement and implement Mainelli's recommendations. Rather, the order simply denied the Heimeses' motion which sought to compel the Arenses to sign a particular set of easement documents. While the 2014 order was a final order with respect to the enforceability of the mediated settlement agreement and for purposes of appeal, the order allowed for the possibility of future orders addressing any disagreement between the parties with the implementation of Mainelli's recommendations. Heimeses' 2017 motion to compel was just such a disagreement and the district court had authority to address it. Thus, the 2017 order was not void and this argument fails. .

*Preclusive Effect of January 2017 Order.*

In their second assigned error, the Heimeses assert that the district court erred in failing to consider the merits of their application to show cause which sought to enforce the court's August 2014 order. As noted above, the district court did consider the merits of their application to show cause when it reviewed the new evidence received at the hearing. The court indicated that there was nothing in the record to cause it to amend its position taken in its January 2017 order. Nevertheless, to the extent that the district court's order was premised on a theory of preclusion due to the matter of the easement having previously been determined in 2017, we find no error. The Arenses argue that the doctrines of claim preclusion and issue preclusion prevent the Heimeses from "attempting to re-style their previously filed Motion to Compel as an 'Application to Show Cause.'" Brief for appellees at 13.

Claim preclusion bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Marie v.*

*State*, 302 Neb. 217, 922 N.W.2d 733 (2019). The doctrine of claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Id.* The doctrine of claim preclusion rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id.*

Issue preclusion bars relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Jordan v. Jordan*, 26 Neb. App. 280, 918 N.W.2d 20 (2018). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* Issue preclusion applies only to issues actually litigated. *Id.* Issue preclusion protects litigants from relitigating an identical issue with a party or his privy and promotes judicial economy by preventing needless litigation. *Jamie N. v. Kenneth M.*, 23 Neb. App. 1, 867 N.W.2d 290 (2015).

More applicable here is the law-of-the-case doctrine. Unlike the doctrines of claim preclusion and issue preclusion, which involve successive suits, the law-of-the-case doctrine involves successive stages of one continuing lawsuit. See *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008). Law of the case is a procedural doctrine that bars reconsideration of the same or similar issues at successive stages of the same suit or prosecution. *Tierney v. Tierney*, 309 Neb. 310, 959 N.W.2d 556 (2021). The doctrine reflects the principle that to promote finality and to protect parties' settled expectations, an issue litigated and terminally decided in one stage of a case should not be later resuscitated at a later stage. *Id.* The law-of-the-case doctrine is a rule of discretion, not jurisdiction. *In re 2007 Appropriations of Niobrara River Waters*, 283 Neb. 629, 820 N.W.2d 44 (2012).

The Nebraska Supreme Court has stated that generally, absent extraordinary circumstances, a court should be reluctant to revisit its own prior decision or that of another court in a single case. *Money v. Tyrrell Flowers, supra*. However, the law-of-the-case doctrine does not apply if considerations of substantial justice suggest a reexamination of the issue is warranted. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). The Supreme Court has also recognized that an exception to the law-of-the case doctrine applies if a party shows a material and substantial difference in the facts on a matter previously addressed by an appellate court. *County of Sarpy v. City of Gretna*, 276 Neb. 520, 755 N.W.2d 376 (2008).

We find that the Heimeses' 2017 motion to compel and their 2020 show cause application were successive stages of the same litigation; i.e., the underlying case filed in 2011. As we discussed above, the 2014 order resolved the enforceability of the mediated settlement agreement, but contemplated future orders regarding implementation of the Mainelli recommendations. Both of the Heimeses two postjudgment pleadings asserted that the Arenses refused to execute certain easement documents as required by Mainelli's recommendations and the August 2014 order and asked the court to require them to comply. The district court denied the motion to compel in January 2017 without further explanation. Because the record in the present appeal does not include a bill of exceptions from the hearing on the motion to compel, we are unable to tell what evidence was presented to the court at that time. Subsequently, in denying the Heimeses' show cause application, the court stated that it found nothing in "this new [m]otion or in any other the new evidence offered" that would convince it to alter its previous ruling.

We conclude that the law-of-the-case doctrine is applicable here. The district court's January 2017 order, in effect, determined that the Arenses were not required to execute the particular easement documents at issue. When subsequently asked again to require them to do so, the court declined a second time. We can find no error in the district court's determination not to alter its previous ruling. The district court did not err in denying the Heimeses' application for order to show cause and dismissing the application with prejudice.

CONCLUSION

Finding no error, we affirm the district court's order denying the Heimeses' application for order to show cause and granting the motion to dismiss with prejudice filed by the Arenses.

AFFIRMED.